UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE SMITH, et al.,<br><br>      Plaintiffs,<br><br>   v.<br><br>TOBINWORLD, et al.,<br><br>      Defendants. | Case No. 16-cv-01676-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

**I. INTRODUCTION**

In 2013, plaintiff MM was an eight-year-old boy ready to embark on the first grade of school. Due to his severe disabilities, the Antioch Unified School District ("AUSD") paid for MM to attend a private school for disabled children known as Tobinworld 2. Tobinworld promised Michele Smith, MM's mother, she would be advised of MM's progress, and promptly informed of any problems or issues that might arise throughout the school year. Keen to start learning, MM reported for duty, and two uneventful weeks ensued. After that fortnight, however, everything allegedly started to change.

According to plaintiffs, Tobinworld personnel began restraining MM improperly and without justification for excessive periods of time. Outraged, Smith and MM brought a dozen claims against Tobinworld, Sarah Forghani (its principal), and Andrew Altes (an administrator). Forghani and Tobinworld now move to dismiss six of plaintiffs' twelve claims, on the ground they fail to state facts sufficient to warrant relief. In the event defendants successfully dislodge plaintiffs' federal jurisdictional hook—a Rehabilitation Act claim—they urge the dismissal of the remaining state law claims in lieu of asserting supplemental jurisdiction. The federal claim, however, adequately has been pleaded, and thus the state law claims must be considered. The

motion to dismiss will be granted with leave to amend as to MM's UCL and Education Code claims, and his IIED claim directed against Tobinworld. The motion is denied as to all other claims.

## II. FACTUAL BACKGROUND[1]

MM is a minor child residing in Antioch, California. He was born on August 23, 2006, and lives with Michele Smith, his mother. MM has been diagnosed with autism, asthma, seizures, bipolar disorder, ADHD, sensory processing disorder, mood disorder, chromosome six deletion, and four other gene deletions. In light of these disabilities, MM receives special education services that were selected by, paid for, and coordinated through AUSD.

In May 2013, AUSD assigned MM to first grade at Tobinworld 2, a school that enrolls students classified as severely emotionally disabled, autistic, or developmentally disabled. Tobinworld claims to have expertise in providing behavioral education for children. It advertises a philosophy that integrates special education with behavioral psychology. Tobinworld touts its state of the art behavior modification system, and insists its goal is to return students to public school or a competitive or sheltered work opportunity.

About two weeks into his tenure at Tobinworld, MM's trouble began. Though MM had never been found a danger to himself or others in any educational setting, Tobinworld personnel began restraining MM improperly for excessive periods of time. School personnel used a "basket hold" technique known to be a danger to children, and intentionally put strain on the pressure points of MM's body. This practice continued on dozens of occasions over the next year, sometimes for periods of time lasting as long as thirty minutes. Tobinworld told Smith it would advise her promptly if any such problems occurred, but it failed repeatedly to inform her MM was restrained without justification during school. Worse, MM avers Tobinworld concealed his abuse from law enforcement and others, and failed to report incidents of abuse as required by California

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of a motion to dismiss.

laws and regulations.

A particularly grim episode took place on April 29, 2014. Altes, an administrator, slammed MM's head on his desk and rubbed his cheek back and forth until he was hurt. Altes also refused to release MM's head despite his cries to be let go. MM left the incident with an abrasion on his cheek, in addition to psychological injury. Altes was physically rough with MM and other children of the school on other occasions, too. According to MM, Altes punched him in the chest during a subsequent interaction. MM also witnessed Altes slam a girl's head onto her desk in such a way that she suffered a nose bleed. Even though the Antioch Police Department reported to Tobinworld in response to MM's incident, Altes was observed exhibiting violent behavior toward children as soon as the next day.

Alongside this conduct, Forghani, a supervisor, coached the school's personnel to restrain students for minor rule infractions, even when less restrictive means of redirecting behavior were available. To create documentation justifying the use of physical force, Tobinworld also told personnel to complete false incident reports stating the student was "a danger to himself and others." Compl. ¶ 38. Employees were further told to record they "prompted" or "redirected" the students to their seats, even when students were slammed down, pinned forcefully to their desks, and restrained improperly without justification.

In May 2014, following the above incidents, Smith requested AUSD change MM's placement. Her request was denied despite the district's alleged knowledge of the abusive environment. Smith further avers Tobinworld failed to supervise its employees, provide training on the least restrictive means to restrain students, and employ certified behavior specialists with proper accreditations. This ultimately created a hostile environment for the school's special needs students. MM, for his part, suffered severe social, emotional, and academic setbacks. While attending Tobinworld, he started having nightmares, became fearful and agitated easily, and began wetting and defacating himself.

Smith, for herself and as MM's guardian ad litem, commenced this action on April 5, 2016. She asserts twelve claims against Tobinworld, Forghani, Altes, and AUSD, including: (1)

violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794; (2) violation of the Rehabilitation Act by AUSD; (3) violation of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12132; (4) violation of the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51 *et seq.*; (5) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (6) battery; (7) false imprisonment; (8) intentional infliction of emotional distress ("IIED"); (9) negligence; (10) negligent hiring, supervision, or retention; (11) violation of California Education Code § 220; and (12) violation of the mandatory duty to report suspected or actual child abuse.

AUSD answered the complaint on May 13, 2016. Tobinworld and Forghani took a different course and filed this motion to dismiss.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted

inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

## IV. DISCUSSION

Defendants seek to halve the complaint by moving to dismiss six claims, under the Rehabilitation Act, Unruh Act, UCL, IIED, Education Code, and child abuse reporting statutes. In the event defendants successfully dislodge plaintiffs' federal jurisdictional hook—the Rehabilitation Act—they urge the dismissal of the remaining state law claims in lieu of asserting supplemental jurisdiction. The federal claim, however, adequately has been pleaded, and thus the state law claims must be considered. The motion to dismiss will be granted with leave to amend as to MM's UCL and Education Code claims, and his IIED claim directed against the institution of Tobinworld.

**A. Federal Rehabilitation Act Claim**

MM's first claim asserts Tobinworld violated section 504 of the Rehabilitation Act. That section provides "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. To establish a violation, a plaintiff must show "(1) she is handicapped within the meaning of the RA; (2) she is otherwise qualified for the benefit or services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Tobinworld contests only elements three and four, and the complaint contains allegations reflecting the first two elements adequately have been pleaded.

*1. Denied Benefits or Services Solely by Reason of Handicap*

Tobinworld's first line of attack is to argue MM does not plausibly plead he was denied any benefits or services while attending the school. The linchpin, to Tobinworld, is "whether

disabled persons were denied meaningful access to state-provided services," *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (internal quotation marks omitted), yet Tobinworld submits MM never was "denied access" to any benefit notwithstanding the hostile environment. Further, Tobinworld insists MM must plead it "acted in bad faith or with gross misjudgment." *See M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 890–91 (8th Cir. 2008). It maintains the allegations of wrongdoing in the complaint simply do not rise to that level.

These objections are off base. The Ninth Circuit does not require bad faith or gross misjudgment to state a Rehabilitation Act claim. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *Mark H. v. Hamamoto*, 620 F.3d 1090, 1102 (9th Cir. 2010). Rather, an organization that discriminates "intentionally or with deliberate indifference" may be liable for compensatory damages. *Mark H.*, 620 F.3d at 1097. Next, though it seems virtually self-evident, the complaint pleads adequately MM's denial of meaningful access to the benefits of his public education. MM avers that, because of his disabilities,[2] Tobinworld restrained him improperly dozens of times, even when restraints were unjustifiable or less restrictive means were available. MM further avers he was punched in the chest, had his head slammed and pinned to his desk, and his cheeks rubbed continuously along the desk's surface until a visible abrasion developed. Tobinworld also allegedly hits, slaps, and throws MM's classmates to the floor, and restrains students unjustifiably for periods of time as long as thirty minutes. Suffice it to say it would be difficult for a student to participate in class while being physically restrained or while peeking up from the arm violently pinning their head against the surface of their desk. Recognizing as much, MM pleads Tobinworld "deprived [him of] time to learn or take part in class activities." Compl. ¶ 62. He also avers Tobinworld had knowledge of this conduct and failed to take any corrective action. *See id.* ¶¶ 27, 42. The complaint accordingly contains allegations sufficient to satisfy element three.

---

[2] Drawing all inferences in favor of MM, as must be done here, it is plausible to conclude MM was restrained unjustifiably and physically abused solely due to his various disabilities.

*2. Recipient of Federal Financial Assistance*

Tobinworld next argues it is not a recipient of federal financial assistance, and accordingly is not subject to the nondiscrimination provision contained in the Rehabilitation Act.  A word of background on the relevant statutory framework may be useful.

Congress enacted the Individuals with Disabilities Education Act ("IDEA") in 1990 to "ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).  The IDEA accomplishes its purpose by providing federal funding to state and local education agencies to assist them in educating disabled children.  Receipt of the funds is conditional on state and local education agencies implementing the substantive and procedural requirements of the IDEA.

Among those requirements, the IDEA seeks to ensure disabled children are educated with children who are not disabled. *Id.* § 1412(5)(A).  "The Act contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the Act also provides for placement in private schools at public expense where this is not possible." *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985). *See also* 20 U.S.C. § 1412(5); 34 C.F.R. § 300.132.

The complaint does not explicitly invoke this framework, but MM avers he "received special education services selected by, paid for[,] and coordinated through [AUSD]." Compl. ¶ 14.  He goes on to state he "began as a special education student assigned by AUSD to Tobinworld" in May 2013. Compl. ¶ 15.  Finally, "[u]pon information and belief," he avers "Tobinworld receives substantial direct and indirect federal funding assistance." Compl. ¶ 7.

This final averment appears to be a factual allegation, but both parties proceed with the understanding "the question of which programs are subject to the [Rehabilitation Act] is a question of law, to be answered in most cases by reference to the statutory authority for the particular disbursements at issue." *Jacobsen v. Delta Airlines, Inc.*, 742 F.2d 1202, 1210 (9th Cir.

1984). To direct that inquiry, the Supreme Court has affixed a trio of helpful guideposts.

In *Grove City College v. Bell*, 465 U.S. 555 (1984), the Supreme Court considered in the context of Title IX the circumstances under which an entity qualifies as a recipient of federal financial assistance. *Id.* at 558. Title IX includes the federal funding language identical to that at issue here. *See* 20 U.S.C. § 1681(a) (prohibiting discrimination under "program or activity receiving Federal financial assistance"). Accordingly, "[t]he Supreme Court has treated this language in Title IX as coextensive with the language in the Rehabilitation Act." *Jacobsen*, 742 F.2d at 1212. In *Grove City*, the petitioner, a private college, did not receive any direct federal funds, but it elected to enroll students who received federal grants that must be used for educational purposes. *Id.* Looking at the text and history, the Court saw "no hint that Congress perceived a substantive difference between direct institutional assistance and aid received by a school through its students." *Id.* at 564. It concluded the statute "encompass[es] *all* forms of federal aid to education, direct or indirect." *Id.* (internal quotation marks omitted).

Two years later, the Court had occasion to weigh in on this language again. *See U.S. Dept. of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597 (1986). In *Paralyzed Veterans*, a disabled veterans group argued the government could enforce the Rehabilitation Act against commercial air carriers by virtue of the federal government's extensive program of financial assistance to airports. Even though the airport *operators* were the sole *recipients* of the federal financial assistance, the veterans argued the funds were used to construct runways, essentially converting the cash into structures that uniquely benefitted air carriers. *Id.* at 606. Rejecting this argument, the Court found "coverage extends to Congress' intended recipient, whether receiving the aid directly or indirectly," but coverage does not "follow[] the aid past the recipient to those who merely benefit from the aid." *Id.* at 607. Unlike *Grove City*, the air carriers were not "mere conduits of the aid to its intended recipient, since, unlike the students, the airports are the intended recipients of the funds." *Id.* The Court concluded the air carriers were not subject to the non-discrimination provisions of the Rehabilitation Act. *Id.* at 613.

The Supreme Court distilled the lessons of these cases in *National Collegiate Athletic*

*Association v. Smith*, 525 U.S. 459 (1999). It considered whether the NCAA—a private association whose members include public and private universities—is a recipient of federal financial assistance. *Id.* at 462. The respondent argued the Association's receipt of periodic dues from federally funded member institutions sufficed to bring it within the statute. *Id.* at 465. The Court disagreed, reiterating: "[e]ntities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of [the statute]; entities that only benefit economically from federal assistance are not." *Id.* at 468. "Unlike the earmarked student aid in *Grove City*," there was no allegation "members paid their dues with federal funds earmarked for that purpose." *Id.* As such, the respondent's showing the NCAA indirectly benefits from the federal assistance afforded its members was insufficient to trigger the statute's coverage. *Id.*

Building from *Grove City*, the Ninth Circuit instructs that when analyzing whether an entity receives federal financial assistance, "[c]ourts should focus . . . on the intention of the government" and "determine whether [it] intended to provide assistance or merely to compensate" the funding recipient. *Jacobsen*, 742 F.2d at 1210. Applying that framework, the Ninth Circuit found federal subsidies count as financial assistance. *Id.*

Here, Section 504 applies if Tobinworld receives IDEA funds, "whether directly or through an intermediary," *Smith*, 525 U.S. at 468, so long as private education providers are one of "Congress' intended recipient[s]," *Paralyzed Veterans*, 477 U.S. at 607, meaning the "federal funds [are] earmarked for that purpose," *Smith* 525 U.S. at 468.[3] According to the money trail detailed by the parties, this appears to be the case.

Once again, the federal funding source offered by the parties is the IDEA, which affords funding to school districts to assist them in providing the required FAPE to disabled children. 20

---

[3] It is worth noting Tobinworld likely is a "program or activity" because it is a "private organization . . . principally engaged in the business of providing education." 29 U.S.C. § 794(b)(3)(A). Additionally, the federal regulations implementing the Act define recipient broadly as "any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly *or through another recipient*." 34 C.F.R. § 104.3(f) (emphasis added).

U.S.C. § 1411.  In certain circumstances the Act "provides for placement [of special education students] in private schools at public expense" to ensure they receive the free and appropriate public education to which they are entitled. *Town of Burlington*, 471 U.S. at 369. *See also* 20 U.S.C. § 1412(5); 34 C.F.R. § 300.133.  In other words, when a disabled child, like MM, gets placed in private school on the public dime, that private school—Tobinworld here—*is* the intended recipient of the federal financial assistance disbursed via the IDEA.  True, AUSD "selected," "paid for," and "coordinated" MM's private school placement at Tobinworld, but like the students in *Grove City*, it served as a "mere conduit[] of the aid to its intended recipient." *Paralyzed Veterans*, 477 U.S. at 607.  Apparently ratifying this chain, Tobinworld admits "the local school district paid for MM's special education at Tobinworld," Reply at 5:11, and that AUSD "*may receive* federal funds." Mot. to Dismiss at 10:25 (emphasis in original).  All told, MM plausibly pleads Tobinworld fits the definition of an intended recipient of federal financial assistance under the Rehabilitation Act.  *See P.N. v. Greco*, 282 F. Supp. 2d 221, 241 (D.N.J. 2003) (finding private school that accepted placement of handicapped student under IDEA was recipient of federal funds).

Invoking *Paralyzed Veterans*, Tobinworld objects to this analysis on the ground that to be a recipient of federal funds, the organization must be in a position to accept or reject the federal funds. *See Paralyzed Veterans*, 477 U.S. at 606.  Like Grove City College, however, Tobinworld occupies that position, as it elects to take placements under the IDEA.  The acceptance of those students, and the federal funds that support them, carries attendant obligations, one of which is the requirement not to discriminate in violation of section 504 of the Rehabilitation Act.

It is worth pausing to note Tobinworld ultimately may show it has not collected a single penny of IDEA money.[4]  Lacking judicially noticeable evidence to that effect, however, the complaint satisfies MM's pleading stage burden on this particular element.  The motion to dismiss

---

[4] Tobinworld submits it was paid pursuant to a contract with the Special Education Local Plan Area ("SELPA"), though again, it admits the SELPA and AUSD may receive federal IDEA funding.

CASE NO. 16-cv-01676-RS

10

the Rehabilitation Act claim accordingly is denied.

### B. State Law Claims

#### 1. Unruh Act

MM's first state law claim proceeds under the Unruh Civil Rights Act. Cal. Civ. Code § 51 *et seq.* That statute provides "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments." *Id.* § 51(b). It also prohibits businesses from "discriminat[ing] against" any person on account of a protected characteristic, including disability. *Id.* § 51.5(a). "[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination," *Harris v. Capital Growth Inv'rs XIV*, 52 Cal. 3d 1142, 1175 (1991), unless they are asserting an ADA violation as the predicate for an Unruh Act violation, *see Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 672 (2009).

MM has pleaded adequately a violation of the Unruh Civil Rights Act. He avers Tobinworld personnel deprived him of the services and privileges of the school "based on his disabilities." Compl. ¶ 105. They accomplished this, among other ways, by placing him in restraints unjustifiably and negligently supervising personnel, resulting in his physical abuse by Altes and others. MM specifically alleges Forghani directed and coached Tobinworld personnel "to improperly restrain MM for minor rule infractions." Compl. ¶ 36. Drawing all inferences in favor of MM at this juncture, he pleads intentional discrimination. The motion to dismiss the Unruh Act claim accordingly will be denied.

#### 2. UCL

MM's next claim proceeds under the UCL. Section 17200 of California's UCL prohibits all unlawful, unfair, or fraudulent business acts or practices. Cal. Bus. & Prof. Code § 17200 *et seq.* Each of these three types of business acts or practices is independently actionable; "a plaintiff may show that the acts or practices at issue are either unlawful *or* unfair *or* deceptive." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002). "A business practice is 'unlawful' if it is forbidden by law." *Id.* (internal quotation marks omitted). "Unfair" business

1   practices are those which "offend[] an established public policy"; are "immoral, unethical,

2   oppressive, unscrupulous or substantially injurious to consumers"; or those which do not outweigh

3   "the gravity of the harm to the alleged victim." *Id.* at 1169–70 (internal quotation marks omitted).

4   Finally, a business practice is "deceptive" if "members of the public are likely to be deceived." *Id.*

5   at 1170.

6       In order to satisfy the UCL's standing requirements, a party must "(1) establish a loss or

7   deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

8   (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or

9   false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

10  310, 322 (2011). Here, MM objects to Tobinworld's advertising on the ground he deems it

11  misleading, but concedes the practice caused him to suffer only "physical and psychological

12  injuries."[5] Opp'n at 17:15–16. Given the complaint does not presently satisfy the UCL's standing

13  requirement, the motion to dismiss this claim will be granted with leave to amend.

14      *3. IIED*

15      The third state law claim is brought by Smith and MM against Tobinworld, Forghani, and

16  Altes on the theory they committed the tort of intentional infliction of emotional distress. To state

17  an IIED claim, a plaintiff must allege "(1) extreme and outrageous conduct by the defendant with

18  the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2)

19  the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were

20  actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran*, 65

21  Cal. App. 4th 488, 494 (1998). For conduct to be outrageous, it "must be so extreme as to exceed

22  all bounds of that usually tolerated in a civilized community." *Id.*

23      Here, the complaint contains allegations sufficient for MM to state an IIED claim against

24  Forghani and Altes.[6] MM avers Forghani "required" Tobinworld personnel to restrain him

---

[5] Tobinworld points out AUSD paid for the special education services provided to MM, and thus MM has not expended any funds.

[6] Altes did not join the instant motion to dismiss, but his conduct is addressed because he was an

improperly and without justification, causing him both "physical and emotional harm." Compl. ¶ 42. Likewise, MM avers Altes punched him in the chest and slammed his head onto his desk, causing him to suffer "significant and enduring psychological injury." Compl. ¶ 54. This conduct appears outrageous in light of the supervisorial position occupied by Forghani and Altes, and the fact that Altes was a 200-pound adult, whereas MM was a 60-pound eight-year-old. *See Yurick v. Superior Court*, 209 Cal.App.3d 1116, 1129 (Ct.App.1989) ("The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests."). The motion to dismiss these particular counts will thus be denied.

MM nominally asserts an IIED claim against Tobinworld directly, but fails to articulate a theory demonstrating how its conduct was extreme and outrageous. He does aver Tobinworld had an obligation to protect children under its care, and notes Tobinworld should have disciplined or terminated Forghani and Altes. It is not clear the failure to discipline them, however, caused *MM* severe emotional distress, or that the failure to fire them amounts to something greater than simple negligence. The motion to dismiss this count will be granted with leave to amend.

Smith asserts IIED claims against both Forghani and Tobinworld, relying on *Phyllis v. Superior Court*, 183 Cal. App. 3d 1193 (1986), for support. There, a mother brought an IIED claim against a school and several of its employees based on the sexual assault and rape of her daughter by a fellow student. *Id.* at 1194–95. The child's teacher, school psychologist, and principal all knew of several incidents of sexual assault, but decided not to notify the mother of any of these events. *Id.* at 1195. The mother insisted she could have prevented the rape had she known of the earlier sexual assaults, and maintained the failure to notify her of the events caused her severe emotional distress. *Id.* The court sustained the mother's IIED claim against the school and its employees, finding "defendants had a duty to notify petitioner upon learning of the first series of sexual assaults." *Id.* at 1196. Instead, "they took it upon themselves to withhold that

---

employee of Tobinworld, which does seek dismissal of an IIED claim.

information" and "engaged in a 'cover-up' which they should have foreseen would cause petitioner more emotional distress than merely informing her of the incidents in the first place." *Id.* at 1196–97.

Similarly here, Smith avers Forghani and Tobinworld had an obligation to protect children under their care, and were well aware MM repeatedly and unjustifiably was being restrained and physically mistreated by school personnel. Further, despite "promis[ing]" Smith upon MM's enrollment she would be clued in to any problems or issues with MM, defendants failed to inform her "MM had been improperly restrained without justification during school." Compl. ¶ 27. Worse, Smith avers Forghani and Tobinworld "concealed MM's abuse from law enforcement *and others*," Compl. ¶ 66 (emphasis added), even though it was foreseeable such conduct would (and did) cause Smith "extreme emotional upset and harm," Compl. ¶ 68. In light of these allegations, Smith has pleaded outrageous conduct with reckless disregard of the probability of causing emotional distress. *Cochran*, 65 Cal. App. 4th at 494. The motion to dismiss the IIED claims against Forghani and Tobinworld will accordingly be denied.

*4. Cal Educ. Code § 220*

MM's fourth claim proceeds under section 220 of the California Education Code. That provision provides "[n]o person shall be subjected to discrimination on the basis of disability . . . in any program or activity conducted by an education institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." Cal. Educ. Code § 220. As a threshold matter, the parties dispute whether this section contains a private right of action, yet the Education Code states "[t]his chapter may be enforced through a civil action." *Id.* § 262.4. *See also Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008) (reading section 220 to permit a private right of action); *C.N. v. Wolf*, 410 F. Supp. 2d 894, 903–04 (C.D. Cal. 2005) (same).

Both parties agree that to state a viable claim, a plaintiff must allege: "(1) he or she suffered 'severe, pervasive and offensive' harassment, that effectively deprived plaintiff of the right of equal access to educational benefits and opportunities; (2) the school district had 'actual

knowledge' of that harassment; and (3) the school district acted with 'deliberate indifference' in the face of such knowledge."[7] *Donovan v. Poway Unified Sch. Dist.*, 167 Cal. App. 4th 567, 579 (2008). Tobinworld contests only that MM suffered "severe, pervasive[,] and offensive" harassment. That argument, however, simply is wide of the mark.

MM avers he was "denied learning time and opportunities when improperly restrained without justification," Compl. ¶ 143, and was physically mistreated at the direction and coaching of several Tobinworld personnel. MM further avers Tobinworld "received regular reports of these improper restraints," Compl. ¶ 42, yet refused to train its staff and indeed concealed the abuse from both parents and the police, *id.* ¶¶ 43, 66. The allegations in the complaint therefore satisfy the requisite elements, but the analysis of the section 220 claim does not end there. The pleading fails to allege Tobinworld "receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid." Cal. Educ. Code § 220. Admittedly, it declares Tobinworld "receives substantial direct and indirect *federal* funding assistance," Compl. § 7 (emphasis added), and notes AUSD "paid for" MM's "special education services," *id.* § 14. Having argued these payments were a pass-through of federal funds, the latter statement does not necessarily establish Tobinworld benefits from *state* financial assistance. Thus, the motion to dismiss must be granted at this juncture, but with leave to amend.

*5. Mandatory Child Abuse Reporting*

MM's final claim is brought against Forghani and Altes and is styled as if it proceeds under the Child Abuse and Neglect Reporting Act ("CANRA"). Cal. Penal Code §§ 11164 *et seq.* That statute requires certain persons, called "mandated reporters," to report known or reasonably suspected child abuse or neglect. *Id.* §§ 11164, 11166. Among the mandated reporters are

---

[7] *Donovan* pertained specifically to a school's liability for peer-on-peer harassment. 167 Cal. App. 4th at 579. As such, it is not clear section 220 requires the deliberate indifference standard outside of that context. Still, MM pleads adequately intentional discrimination on the basis of his disabilities, so it is appropriate to examine the deliberate indifference standard nonetheless. Additionally, though *Donovan*'s articulation of the elements references a school district, the statute by its terms applies to any education institution that receives or benefits from state financial assistance.

1  "administrator[s] or employee[s] of a public or private organization whose duties require direct
2  contact [with] and supervision of children." *Id.* § 11165.7(a)(8).

3  Though MM asserts a private right of action arises directly under the Act, the authority he
4  invokes states the statute can be employed as the basis for a negligence per se claim. *See Landeros*
5  *v. Flood*, 17 Cal. 3d 399, 413 (1976) ("[B]y omitting to report plaintiff's injuries to the authorities
6  as required by law, defendants failed to exercise due care - a presumption now codified in
7  Evidence Code section 669."). The complaint apparently recognizes as much and proceeds under
8  that theory, even though it fails to state the phrase "negligence per se" by name.

9  Negligence per se requires: (1) a defendant violated a statute, ordinance, or regulation; (2)
10 the violation proximately caused injury; (3) the injury resulted from an occurrence the enactment
11 was designed to prevent; and (4) the plaintiff was a member of the class of persons the statute was
12 intended to protect. *Ramirez v. Nelson*, 44 Cal. 4th 908, 917–18 (2008). Here, MM avers Forghani
13 was a mandated reporter because she was a teacher or administrative officer at a private school.
14 He further avers "[n]o Tobinworld employee filed a report of suspected child abuse regarding MM
15 at any time, including on April 29, 2014, when MM was visibly injured." Compl. ¶ 57. The
16 "breach in complying with the mandatory reporter duties" allegedly "contributed to MM's
17 injuries," *id.* ¶ 148, as parents or police may have prevented further harassment. Finally, MM
18 avers the statute was enacted "to protect minors from such abuse," and he in fact *is* one of those
19 contemplated minors. *Id.* ¶ 148. MM pleads adequately a claim for negligence per se against
20 Forghani. The motion to dismiss this count accordingly will be denied.[8]

### V. CONCLUSION

22 The motion to dismiss will be granted with leave to amend as to MM's UCL and
23 Education Code claims, and his IIED claim directed against Tobinworld. It is denied as to all
24 other claims. Should plaintiffs elect to file an amended complaint, they must do so within thirty
25 (30) days from the date of this order.

---

[8] The claim against Altes need not be reached as he has not joined the motion to dismiss.

**IT IS SO ORDERED**.

Dated: June 28, 2016

_____
RICHARD SEEBORG
United States District Judge