LOUIS A. LEONE, ESQ. (SBN: 099874)
CLAUDIA LEED, ESQ. (SBN: 122676)
IOANA R. MONDESCU (SBN 209471)
SETH L. GORDON, ESQ. (SBN: 262653)
**LEONE & ALBERTS**
A Professional Corporation
2175 N. California Blvd., Suite 900
Walnut Creek, CA  94596
Telephone:   (925) 974-8600
Facsimile:   (925) 974-8601
Email: lleone@leonealberts.com
           cleed@leonealberts.com
           imondescu@leonealberts.com
           sgordon@leonealberts.com

Attorneys for Defendant, Crossclaimant and Third-Party Plaintiff
ANTIOCH UNIFIED SCHOOL DISTRICT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELE SMITH, M.M., a minor by and through his guardian ad litem, MICHELE SMITH,<br><br>              Plaintiffs,<br><br>       vs.<br><br>ANTIOCH UNIFIED SCHOOL DISTRICT, TOBINWORLD, SARAH FORGHANI, ANDREW ALTES and DOES 1-30,<br><br>              Defendants, | Case No.:   3:16-cv-01676 RS<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER GRANTING LEAVE TO FILE CROSSCLAIM AND THIRD-PARTY COMPLAINT AND ISSUANCE OF SUMMONS** |
| ANTIOCH UNFIED SCHOOL DISTRICT,<br><br>              Crossclaimant,<br><br>       vs.<br><br>TOBINWORLD and DOES 31-75,<br><br>              Cross-Defendants. | |

ANTIOCH UNIFIED SCHOOL DISTRICT

     Third-Party Plaintiff,

        vs.

PHILADELPHIA INSURANCE COMPLANIES, TOKIO MARINE SPECIALTY INSURANCE COMPANY and ROES 1 through 50

     Third-Party Defendants.

The parties to the above captioned action hereby stipulate by and through their undersigned counsel of record as follows:

WHEREAS, on July 28, 2016 the plaintiffs filed a First Amended Complaint ("FAC") in the above captioned action entitled Michele Smith, et al v. Antioch Unified School District, et al, U.S.D.C. Case No.: 3:16-cv-01676RS.

WHEREAS, plaintiffs' FAC contains federal claims for violation of Section 504 of the Rehabilitation Act of 1973, violation of the American's with Disabilities Act, violation of the Unruh Act, unfair business practices, false imprisonment, battery, intentional infliction of emotional distress, negligent hiring, supervision or retention, negligence, violation of mandatory duty, and violation of § 220 of the Education Code and names as defendants the Antioch Unified School District (hereinafter the "District"), Tobinworld, Sarah Forghani, Andrew Altes and DOES 1-30.

WHEREAS on August 25, 2016, the District answered Plaintiffs' FAC, denying in part and admitting in part the allegations of the FAC and asserting all appropriate affirmative defenses thereto.

WHEREAS, the parties agree to request that this Court grant the District leave to file a Crossclaim and Third-Party Complaint that names Defendant Tobinworld and DOES 31-75 as Cross-Defendants in the Crossclaim and Philadelphia Insurance Companies, Tokio Marine Specialty Insurance Company and ROES 1 through 50 as Third-Party Defendants in the Third-Party Complaint.

///

WHEREAS, Plaintiffs have brought certain claims against the District and Cross-Defendants, alleging injuries arising out of Cross-Defendants' providing educational services to the Plaintiff M.M.

WHEREAS, the District and Cross-Defendant entered into a Master Contract providing for such educational services by Cross-Defendant to Plaintiff M.M.  The Master Contract contained an Indemnity and Hold Harmless provision and an insurance clause, which provided for certain rights and responsibilities of Cross-Defendant and the District.  The District has tendered the defense and indemnity to Cross-Defendant under the Indemnity and Hold Harmless clause as well as the insurance provision in the Master Contract and the Cross-Defendant has denied the tender.

WHEREAS, the Third-Party Defendants Philadelphia Insurance Companies, Tokio Marine Specialty Insurance Company and ROES 1 through 50 are believed to be insurance carriers for Cross-Defendants and are believed to have provided coverage to Cross-Defendants and the District with respect to the claims alleged by the Plaintiffs in their FAC against the defendants.  The District has tendered the defense to the Third-Party Defendants with regard to the claims brought by the Plaintiffs as additional insureds on the insurance policies issued by the Third-Party Defendants to Cross-Defendants.  The Third-Party Defendants have denied the tender.

WHEREAS, the claims asserted against Cross-Defendants and Third-Party Defendants arise out of the same transaction or occurrence that is the subject matter of the Plaintiffs' FAC because such claims are for indemnity, contribution, declaratory relief as to the duty to defend and indemnify and breach of the Master Contract and the insurance contract.

WHEREAS, Cross-Defendant's response to the Crossclaim shall be due to be filed within 20 days of service.

///

///

///

1    **IT IS SO STIPULATED:**

2

3    Dated: November 8, 2016                    **LEONE & ALBERTS**

4
                                                /s/Louis A. Leone
5                                               LOUIS A. LEONE, ESQ.
                                                IOANA R. MONDESCU, ESQ.
6                                               Attorneys for Defendant/Crossclaimant/
                                                Third-Party Plaintiff Antioch Unified School
7                                               District

8

9    Dated:  November 8, 2016                   **HINTON ALFERT PC**

10
                                                /s/Peter W. Alfert
11                                              PETER W. ALFERT, ESQ.
                                                Attorneys for Plaintiffs
12

13   Dated:  November 8, 2016                   **LAW OFFICES OF TODD BOLEY**

14
                                                /s/Todd Boley
15                                              TODD BOLEY, ESQ.
                                                Attorneys for Plaintiffs
16

17   Dated: November 8, 2016                    **PERRY JOHNSON ANDERSON**
                                                **MILLER & MOSKOWITZ**
18

19                                              /s/David F. Beach
20                                              DAVID F. BEACH, ESQ.
                                                Attorneys for Defendant/Cross-Defendant
21                                              Tobinworld

22

23   Dated: November 8, 2016                    **ERICKSEN ARBUTHNOT**

24
                                                /s/Lois Anne Lindstrom
25                                              LOIS ANNE LINDSTROM, ESQ.
                                                Attorneys for Defendant
26                                              Andrew Altes

27

28

---

## ORDER

Pursuant to the Stipulation of the parties and good cause appearing it is hereby ordered as follows:

1.    Defendant is granted leave to file a Crossclaim and Third-Party Complaint in this Court, attached hereto as Exhibit A.

2.    Summons on the Crossclaim and Third-Party Complaint shall be issued by this Court.

3.    Cross-Defendant's response to the Crossclaim shall be due within 20 days of service of the Crossclaim.

**IT IS HEREBY ORDERED.**

Dated: ___11/9_____, 2016    _____
                                   UNITED STATES DISTRICT COURT JUDGE
                                   RICHARD SEEBORG



JS-CAND 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) ~~PLAINTIFFS~~** Crossclaimant/Third Party Plaintiff

Antioch Unified School District

**(b)** County of Residence of First Listed Plaintiff | Contra Costa County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ioana R. Mondescu, Esq. (SBN 209471)/Leone & Alberts
2175 N. California Blvd., Suite 900
Walnut Creek, CA 94596
Tel: (925) 974-8600 Fax: (925) 974-8601 Email: imondescu@leonealberts.com

**~~DEFENDANTS~~** Cross-Defendants Tobinworld, and Does 31-75

Third-Party Defendants
Philadelphia Insurance Companies, Roes 1 through 50

County of Residence of First Listed Defendant | Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC § 881 | ☐ 422 Appeal 28 USC § 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury – Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC § 157 | ☐ 376 Qui Tam (31 USC § 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment Of Veteran's Benefits | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury – Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS–Third Party 26 USC § 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities– Employment | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities– Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee– Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation–Transfer | ☐ 8 Multidistrict Litigation–Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Indemnity, Contribution, Breach of Contract, Declaratory Relief

| **VII. REQUESTED IN COMPLAINT:** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, Fed. R. Civ. P. | **DEMAND $** | CHECK YES only if demanded in complaint: |
|---|---|---|---|
| | | | **JURY DEMAND:** ☒ Yes ☐ No |

| **VIII. RELATED CASE(S), IF ANY** *(See instructions)*: | JUDGE | DOCKET NUMBER |
|---|---|---|

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)

(Place an "X" in One Box Only)   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA-MCKINLEYVILLE

**DATE:**                         **SIGNATURE OF ATTORNEY OF RECORD:**

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| Michele Smith, M.M. | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action  No.  3:16-cv-01676 RS |
| Antioch Unified School District | ) |
| *Defendant, Third-party plaintiff* | ) |
| v. | ) |
| Philadelphia Insurance Company | ) |
| *Third-party defendant* | ) |

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*   Philadelphia Insurance Company,
One Bala Plaza, Suite 100
Bala Cynwyd, PA  19004

A lawsuit has been filed against defendant   Antioch USD          , who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff   Michele Smith, et al.          .

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:
 Ioana Mondescu, Esq., Leone & Alberts, 2175 N. California Blvd., Suite 900, Walnut Creek, CA 94596
 Lois Anne Lindstrom, Esq., Ericksen Arbuthnot, 2300 Clayton Road, Suite 350, Concord, CA 94520
 David Beach, Esq., Perry Johnson Anderson, et al., 438 First Street, 4th Floor, Santa Rosa, CA 94501

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
 Peter Alfert, Esq., Hinton Alfert, PC, 200 Pringle Avenue, Suite 450, Walnut Creek, CA 94596
 Todd Boley, Esq., Law Offices of Todd Boley, 2381 Mariner Square Drive, Suite 2780, Alameda, CA 94501

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint.  You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached.  You may – but are not required to – respond to it.

Date:  _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint (Page 2)

Civil Action No.   3:16-cv-01676 RS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify)*: _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____                       _____
                                              *Server's signature*

                                              _____
                                              *Printed name and title*

                                              _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 441 (Rev. 07/10) Summons on Third-Party Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern    District of District

Michele Smith, M.M.

_____
*Plaintiff*                    )
                               )
v.                             )
                               )    Civil Action No. 3:16-cv-01676 RS
Antioch Unified School District )
_____
*Defendant, Third-party plaintiff* )
                               )
v.                             )
                               )
Tokio Marine Specialty Insurance )
Company                        )
_____
*Third-party defendant*

## SUMMONS ON A THIRD-PARTY COMPLAINT

To: *(Third-party defendant's name and address)*
Tokio Marine Specialty Insurance Company, One Bala Plaza Suite 100
Bala Cynwyd PA 19004

A lawsuit has been filed against defendant  Antioch USD        , who as third-party plaintiff is making this claim against you to pay part or all of what the defendant may owe to the plaintiff  Michele Smith, M.M.   .

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff and on the defendant an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the defendant or defendant's attorney, whose name and address are:
Louis Leone, Esq., Leone & Alberts, 2175 N. California Blvd., Suite 900, Walnut Creek, CA 94596
Lois Anne Lindstrom, Esq., Ericksen Arbuthnot, 2300 Clayton Road, Suite 350, Concord, CA 94520
David Beach, Esq., Perry Johnson Anderson, et al., 438 First Street, 4th Floor, Santa Rosa, CA
94501

It must also be served on the plaintiff or plaintiff's attorney, whose name and address are:
Peter Alfert, Esq., Hinton Alfert, PC, 200 Pringle Avenue, Suite 450, Walnut Creek, CA 94596
Todd Boley, Esq., Law Offices of Todd Boley, 2381 Mariner Square Drive, Suite 2780, Alameda, CA 94501

If you fail to respond, judgment by default will be entered against you for the relief demanded in the third-party complaint.  You also must file the answer or motion with the court and serve it on any other parties.

A copy of the plaintiff's complaint is also attached.  You may – but are not required to – respond to it.

Date: _____

                                        *CLERK OF COURT*

                                        _____
                                        *Signature of Clerk or Deputy Clerk*

AO-441

AO 441 (Rev. 07/10)  Summons on Third-Party Complaint (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*: _____

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____         _____
                                                                *Server's signature*

                                          _____
                                                                *Printed name and title*

                                          _____
                                                                *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| ANTIOCH UNIFIED SCHOOL DISTRICT | ) |
| | ) |
| | ) |
| ―――――――――――――――――――――――― | ) |
| Cross-Claimant *Plaintiff(s)* | ) |
| v. | )    Civil Action No.  3:16-cv-01676 RS |
| TOBINWORLD and DOES 30-100 | ) |
| | ) |
| | ) |
| ―――――――――――――――――――――――― | ) |
| Cross-*Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  TOBINWORLD, 920 E. Broadway Avenue, Glendale, CA 91205

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Louis A. Leone, Leone & Alberts, 2175 N. California, Suite 900, Walnut Creek, CA
94596

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ―――――――――――――――――   ――――――――――――――――――――――――
                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  3:16-cv-01676 RS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                            *Server's signature*

                                       _____
                                            *Printed name and title*


                                       _____
                                            *Server's address*

Additional information regarding attempted service, etc:

1    LOUIS A. LEONE, ESQ. (SBN: 099874)
2    CLAUDIA LEED, ESQ. (SBN: 122676)
     IOANA R. MONDESCU (SBN 209471)
3    SETH L. GORDON, ESQ. (SBN: 262653)
     **LEONE & ALBERTS**
4    A Professional Corporation
     2175 N. California Blvd., Suite 900
5    Walnut Creek, CA  94596
6    Telephone:   (925) 974-8600
     Facsimile:    (925) 974-8601
7    E-Mail: lleone@leonealberts.com
8          cleed@leonealberts.com
           imondescu@leonealberts.com
9          sgordon@leonealberts.com

10   Attorneys for Defendant and Cross-Complainant
11   ANTIOCH UNIFIED SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO BRANCH)

| | |
|---|---|
| MICHELE SMITH, M.M., a minor by and through his guardian ad litem, MICHELE SMITH | **CASE NO.:  16-cv-01676 RS** |
|      Plaintiffs, | **CROSSCLAIM AND THIRD-PARTY COMPLAINT OF DEFENDANT ANTIOCH UNIFIED SCHOOL DISTRICT FOR IMPLIED (EQUITABLE) INDEMNITY, EXPRESS CONTRACTUAL INDEMNITY, CONTRIBUTION, GENERAL DECLARATORY RELIEF; DECLARATORY RELIEF ON DUTY TO DEFEND, DECLARATORY RELIEF ON DUTY TO INDEMNIFY, BREACH OF CONTRACT RE: INSURANCE PROVISION, BREACH OF CONTRACT OF DUTY TO DEFEND, BREACH OF CONTRACT OF DUTY TO INDEMNIFY AND PROFESSIONAL NEGLIGENCE** |
|      vs. | |
| ANTIOCH UNIFIED SCHOOL DISTRICT, TOBINWORLD, SARAH FORGHANI, ANDREW ALTES and DOES 1-30, | |
|      Defendants. | |
| ANTIOCH UNFIED SCHOOL DISTRICT, | |
|      Cross-Claimant/Third-Party Plaintiff, | |
|      vs. | |
| TOBINWORLD and DOES 31-75, | **[JURY TRIAL DEMANDED]** |
|      Cross-Defendant. | |

ANTIOCH UNIFIED SCHOOL DISTRICT

      Third-Party Plaintiff,

          vs.

PHILADELPHIA INSURANCE
COMPANIES, TOKIO MARINE
SPECIALTY INSURANCE COMPANY,
ROES 1 through 50

      Third-Party Defendants.

## JURY TRIAL DEMAND

CROSSCLAIMANT/THIRD-PARTY PLAINTIFF ANTIOCH UNIFIED SCHOOL DISTRICT hereby demands a jury trial in this case.

## DEFENDANT- CROSSCLAIMANT ANTIOCH UNIFIED SCHOOL DISTRICT'S
## CROSS-CLAIM AGAINST CROSS-DEFENDANT TOBINWORLD

Crossclaimant, ANTIOCH UNIFIED SCHOOL DISTRICT (hereinafter the "District" or "Crossclaimant") hereby files its Crossclaim against Defendant/Cross-Defendant TOBINWORLD, and each of them, as follows:

## I.  GENERAL ALLEGATIONS

1.      Crossclaimant is a party to this action brought by Plaintiff and, at all relevant times herein, is and was a public entity, namely a unified school district, organized and existing pursuant to the laws of the State of California with its principal place of business within the County of Contra Costa.

2.      At all pertinent times, TOBINWORLD (hereinafter "Cross-Defendant") is and was a California nonprofit corporation, providing educational services to students with disabilities, with its principal place of business in Glendale, California.

3.      Crossclaimant is ignorant of the true names and capacities of Cross-Defendants sued herein as DOES 31 through 75, and therefore sues said Cross-Defendants by such fictitious names.  Crossclaimant is ignorant of the true names and capacities of DOES 31 through 75 because Crossclaimant has not received all

pertinent insurance documents and/or communications between or among

Crossdefendant Tobinworld and/or its insurance carrier(s) and/or broker(s).  The

District will amend this Crossclaim to allege their true names and capacities when

ascertained.  The District is informed and believes that each such Cross-Defendants is

in some manner responsible for the injuries suffered by the District alleged herein.

4.      The District is informed and believes that Cross-Defendants DOES 31

through 50 are and were insurance companies, each of which are or were a

corporation and/or an unknown business entity organized and/or existing under the

laws of the State of California or another State, with their principal place of business

presently unknown, but conducting business within the State of California.

5.      The District is informed and believes that Cross-Defendants DOES 51

through 75 are and were insurance brokers, each of which are or were a corporation

and/or an unknown business entity organized and/or existing under the laws of the

State of California or another State, with their principal place of business presently

unknown, but conducting business within the State of California.

6.      At all relevant times, each Cross-Defendant was an agent, servant,

employee, or insurer of one or more of the remaining Cross-Defendants, and was

acting within the course and scope of said agency and/or employment.

7.      On or about July 28, 2016, Plaintiffs filed a First Amended Complaint

("FAC") for damages against TOBINWORLD, the District and others.  Crossclaimant

incorporates herein by reference Plaintiffs' FAC, without admitting any of the

allegations contained therein, a copy of which is attached as Exhibit A.

8.      The FAC alleges that on or about May 9, 2013, M.M. began classes as a

special education student in first grade assigned by the District to Cross-Defendant's

school in Antioch, California.

9.      The FAC alleges that between May 2013 and May 2014, M.M. was

physically and psychologically abused by Cross-Defendant's teachers and staff.  As

against the District, Plaintiffs bring causes of action for violation of Section 504 of the

1  Rehabilitation Act of 1973, 29 U.S.C. section 794 et seq, discrimination under the
2  Americans with Disabilities Act (42 U.S.C. 12131 et seq), negligence, and violation of
3  California's Education Code section 220.  Plaintiffs allege that the District was on
4  notice that Cross-Defendant was an unsafe educational environment that was likely to
5  and did cause harm to M.M., but nonetheless they placed M.M. at Cross-Defendant's
6  school. As a proximate result of the District's negligence, Plaintiffs incurred damages.

7      10.   At all times relevant hereto, responsibility for the instruction and
8  supervision of students was solely that of Cross-Defendant and its agents or
9  employees and not that of the District.

10     11.   Plaintiffs' injuries were proximately caused in whole or in part by the
11  negligence of Cross-Defendant and not that of the District.

12     12.   The conduct alleged in the FAC occurred at Cross-Defendant's school,
13  while M.M. was in the care, custody and control of Cross-Defendant's staff.

14     13.   The negligence of the Cross-Defendant includes, but is not necessarily
15  limited to, negligently failing to supervise or train its employees to prevent improper
16  restraints of M.M. and other forms of physical abuse and psychological abuse while
17  M.M. was attending school.

18     14.   Plaintiffs further allege that by improperly restraining M.M, Cross-
19  Defendant unlawfully denied M.M. equal access to educational services and subjected
20  him to a hostile educational environment by reason of his disability, causing him
21  special and general damages. Cross-Defendant knew or should have known that its
22  staff was physically and/or emotionally abusing M.M., causing him injuries.

23     15.   On or about January 23, 2014, the District and Cross-Defendant entered
24  into a Master Contract for the purpose of providing special education and/or related
25  services to special needs students in the District under the Individuals with Disabilities
26  Education Improvement Act of 2004 ("IDEA") and related California law, including
27  California Education Code sections 56157, 56361 and 56365 et seq., and Title 5 of the
28  California Code of Regulations section 3000 et seq.

16.     The Master Contract contained an INDEMNIFICATION AND HOLD HARMLESS provision, which indemnity provision states that Cross-Defendant will indemnify the District, and hold the District harmless, from and against any and all actions, claims, liens, damages, penalties, obligations or liabilities that may be asserted in connection with Cross-Defendant's activities under the Master Contract or any other action by Cross-Defendant, its agents, officers, employees or invitees.  A true and correct copy of the Master Contract containing the Indemnity and Hold Harmless provision is attached hereto as "Exhibit B" and incorporated herein by this reference.

17.     Pursuant to the INDEMNITY AND HOLD HARMLESS provision, Cross-Defendant agreed in relevant part as follows:

CONTRACTOR [Cross-Defendant] shall indemnify and hold LEA [the District] and its Board Members, administrators, employees, agents, attorneys, volunteers, and subcontractors ("LEA Indemnitees") harmless against all liability, loss, damage and expense (including reasonable attorneys' fees) resulting from or arising out of this Master Contract or its performance, to the extent that such loss, expense, damage or liability was caused by sole negligence or willful misconduct of CONTRACTOR, including without limitation, its agents, employees, subcontractors or anyone employed directly or indirectly by it (excluding LEA and LEA Indemnities.)

18.     The Master Contract also contained an "INSURANCE" provision, which provision obligates Cross-Defendant to procure and maintain insurance against claims for injuries which may arise from, or in connection with performance under the Master Contract by Cross-Defendant and shall name the District as an additional insured for each required policy of insurance, including, but not limited to, Commercial General Liability and Professional Liability/Errors and Omissions, including Sexual Molestation and Abuse coverage.

///

19.   The District is informed and believes that Cross-Defendant procured general liability insurance through multiple carriers, including Third-Party Defendants Philadelphia Insurance Companies and Tokio Marine Specialty Insurance Company for the period December 5, 2012 through December 5, 2013 and December 5, 2013 through December 5, 2014 (Philadelphia Insurance Company policy numbers PHPK 798979 and PHPK1104849) with the District named as an additional insured.

20.   As a result of the claims asserted by the Plaintiffs against the District in the FAC, the District has been and will be exposed to and will incur losses and expenses through the time of trial and has and will continue to incur attorney's fees and costs herein, and may also come to be held liable for Plaintiffs' claims and thereby suffer further losses.

21.   After it was served with the lawsuit, the District tendered the claim to Cross-Defendant and its insurance carriers on numerous occasions.  Specifically, on April 12, April 27, and September 1, 2016, the District sent correspondence to Cross-Defendant TOBINWORLD, requesting that Cross-Defendant defend and indemnify the District with regard to Plaintiffs' FAC.  The Cross-Defendant denied the first two tender requests and has not responded to the third.

22.   On May 11, August 24, and September 19, 2016, the District sent correspondence to representatives and/or agents of Philadelphia Insurance Companies and Tokio Marine Specialty Insurance Company, requesting that the insurance carriers defend Crossclaimant with respect to Plaintiffs' FAC. The first two requests were ignored.  Counsel for Philadelphia Insurance Companies responded to the District's third request, indicating that the tender is under review.  To date, no insurance carrier has accepted the defense.

23.   To date, neither Cross-Defendant, nor any of its carriers has accepted the District's tender of defense and indemnity.

///

///

## II.  FIRST CAUSE OF ACTION

### Implied (Equitable) Indemnity

### (Against All Cross-Defendants)

24.    Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

25.    Plaintiffs have filed suit with respect to the alleged incident as set forth in the FAC.  Crossclaimant denies that it either caused or contributed to the losses described in Plaintiffs' FAC.

26.    Crossclaimant has, nevertheless, incurred expenses, including attorney's fees, court costs, etc and will continue to do so herein.

27.    If it is found that Crossclaimant is responsible for any of the allegations contained in Plaintiffs' FAC, as a matter of its equitable rights, then Crossclaimant is entitled to have Cross-Defendant and DOES 31 through 75 fully or partially indemnify and exonerate Crossclaimant for any and all liability, judgments, settlement expenses or other losses incurred in defending and/or resolving said claims pending against Crossclaimant, including those arising under the Master Contract and this Crossclaim brought to enforce such obligations.

28.    If it is found that Crossclaimant is responsible for any of the allegations contained in Plaintiffs' FAC, then Crossclaimant is entitled to a declaration regarding its apportionment of fault in relation to that of Cross-Defendant and DOES 31 through 75.

29.    As a proximate result of the foregoing, Crossclaimant has sustained and will sustain losses and expenses, including, but not limited to, attorney's fees, court costs, consultant's fees and other expenses and will continue to sustain losses and expenses through the time of trial and any appeal in this matter, and may incur losses required of it to pay any judgment against it obtained by the Plaintiffs or any settlement it becomes necessary for Crossclaimant to pay to Plaintiffs.

///

### III. SECOND CAUSE OF ACTION

### Express Contractual Indemnity

### (Against Cross-Defendant TOBINWORLD)

30.     Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

31.     Crossclaimant has sustained and will sustain losses and expenses, including, but not limited to, attorney's fees, court costs, and other expenses and will continue to do so herein, and Cross-Defendant is responsible to indemnify, pay and hold Crossclaimant harmless from and reimburse Crossclaimant for all such losses incurred herein.

32.     Furthermore, should Plaintiffs establish liability on the part of Crossclaimant, which liability is expressly denied, or in the event that it shall become necessary for Crossclaimant to settle with Plaintiffs to avoid the risks of greater liability being found upon adjudication of this litigation, Cross-Defendant is required pursuant to the indemnification provision contained in the Master Contract, to defend, indemnify, reimburse and hold Crossclaimant harmless from and against any such liability, judgment or settlement expenses.

33.     Pursuant to the terms of the Master Contract's Indemnity and Hold Harmless provision, Crossclaimant is entitled and hereby seeks an award and judgment from the Court in its favor and against Cross-Defendant for indemnity for all of Crossclaimant's losses and expenses, including but not limited to its attorney's fees and court costs and other losses and any judgment or settlement required to be paid by Crossclaimant incurred as a result of Cross-Defendant's performing its obligations under the Master Contract, or other related actions and Crossclaimant's pursuing its rights to indemnification.

34.     Crossclaimant has been required to retain the services of an attorney to prosecute this crossclaim and is entitled to an award of reasonable attorney's fees and

///

costs incurred herein, both pursuant to any statute, rule or contractual provision allowing for the same, and also as special damages incurred herein.

## IV. THIRD CAUSE OF ACTION

### Contribution

### (Against all Cross-Defendants)

35.    Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

36.    Crossclaimant is informed and believes and thereon alleges that Cross-Defendant and DOES 31 through 75 is responsible in whole or in part for the obligation, if any, owed to Plaintiffs.  If Plaintiffs recover against Crossclaimant, then Crossclaimant is entitled to contribution from Cross-Defendant and DOES 31 through 75, according to its share of the obligation, if any, owed to Plaintiffs, by way of damage or loss by settlement or otherwise, or, in the alternative, for any judgment rendered against Crossclaimant.

## V.  FOURTH CAUSE OF ACTION

### General Declaratory Relief

### (Against All Cross-Defendants)

37.    Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

38.    A determination of the proportionate degree of liability, if any, of Crossclaimant on the one hand and Cross-Defendant on the other hand, is necessary and appropriate.

39.    An actual controversy has arisen and now exists between the District and Cross-Defendant and DOES 31 through 75 as to their respective rights and duties owed to Plaintiffs, and the apportionment of fault and liability owed to Plaintiffs, if any, and therefore the District seeks a declaration of its rights to indemnification, contribution and/or apportionment, and adjudicating and declaring all other rights and

///

duties of the Crossclaimant and the Cross-Defendant herein, pursuant to the Master Contract.

40.    If any recovery is had against Crossclaimant, Crossclaimant is entitled to an Order of Declaratory Relief, indicating its right to recover from Cross-Defendant, together with its reasonable attorney's fees and costs incurred herein, pursuant to any statute or rule or contractual provision allowing for the same and any special damages incurred herein.

## VI.  FIFTH CAUSE OF ACTION
### Declaratory Relief Re: Duty to Indemnify
### (Against Cross-Defendant TOBINWORLD)

41.    Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

42.    Under the INDEMNITY AND HOLD HARMLESS provision of the Master Contract, Cross-Defendant is obligated to indemnify and hold Crossclaimant harmless against any and all losses, claims, liabilities or other damages incurred in this action relating to matters embraced by the indemnity provisions.

43.    Crossclaimant contends that the indemnity provisions provide indemnification and defense by Cross-Defendant for the causes of action asserted against Crossclaimant in Plaintiffs' FAC.

44.    Crossclaimant has been required to retain the services of an attorney to prosecute this action and is entitled to an award of reasonable attorney's fees and costs incurred herein, pursuant to any statute, rule, or contractual provision allowing for the same and any special damages incurred herein.

45.    An actual controversy exists between the District and Cross-Defendant and DOES 51 through 100 as to their respective rights and duties owed to Plaintiffs under the Indemnity and Hold Harmless provision in the Master Contract.  Therefore the District seeks an Order of Declaratory Relief, declaring, decreeing and adjudicating that Cross-Defendant is obligated to accept the District's tender of defense and

indemnity and indemnify the District against any and all losses, claims, liabilities, etc
as prescribed under the Master Contract's Indemnity and Hold Harmless provision.

## VII.   SIXTH CAUSE OF ACTION

### Declaratory Relief Re: Duty to Defend

### (Against Cross-Defendant TOBINWORLD)

46.     Crossclaimant incorporates by reference each and every allegation
contained in the above paragraphs as though fully set forth in this cause of action.

47.     Under the INDEMNITY AND HOLD HARMLESS provision of the Master
Contract, Cross-Defendant is obligated to indemnify and hold Crossclaimant harmless
against any and all losses, claims, liabilities or other damages incurred in this action
relating to matters embraced by the indemnity provisions.

48.     Crossclaimant contends that the Indemnity and Hold Harmless clause
obligates Cross-Defendant to defend Crossclaimant against the causes of action
asserted against Crossclaimant in Plaintiffs' FAC.

49.     Crossclaimant has been required to retain the services of an attorney to
prosecute this action and is entitled to an award of reasonable attorney's fees and
costs incurred herein, pursuant to any statute, rule, or contractual provision allowing
for the same and any special damages incurred herein.

50.     An actual controversy exists between the District and Cross-Defendant
and DOES 51 through 100 as to their respective rights and duties owed to Plaintiffs
under the Indemnity and Hold Harmless provision in the Master Contract.  Therefore
the District seeks an Order of Declaratory Relief, declaring, decreeing and adjudicating
that Cross-Defendant is obligated to accept the District's tender of defense and defend
the District in the present action.

///

///

///

///

## VIII.    SEVENTH CAUSE OF ACTION

### Breach of Master Contract re: Insurance Provision

### (Against Cross-Defendant TOBINWORLD)

51.    Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

52.    Crossclaimant entered into a written Master Contract with Cross-Defendant as alleged herein, which contract provided for various obligations to be performed by Cross-Defendant, including but not limited to an obligation to obtaining sufficient liability insurance and naming Crossclaimant as additional insured under said policies of insurance.

53.    Crossclaimant has performed all conditions, covenants and promises required by it in accordance with the terms and conditions of the aforementioned Master Contract.

54.    Upon information and belief, Cross-Defendant has failed to name Crossclaimant as an additional insured under the aforementioned policies of insurance as required under the Master Contract.

55.    Cross-Defendant has breached the aforementioned Master Contract by failing to maintain sufficient liability insurance, or appropriate coverage, or naming Crossclaimant as an additional insured.

56.    As a result of the aforementioned breach, Crossclaimant has incurred, and continues to incur damages in defending against Plaintiffs' allegations in the FAC.

### IX. EIGHTH CAUSE OF ACTION

### Breach of Master Contract of Duty to Indemnify

### (Against Cross-Defendant TOBINWORLD)

57.    Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

58.    Crossclaimant entered into a written Master Contract with Cross-Defendant as alleged herein, which contract provides for Cross-Defendant's duty to

defend and indemnify Crossclaimant with regards to the causes of action brought against it by Plaintiffs.

59.     Under the INDEMNITY AND HOLD HARMLESS provision of the Master Contract, Cross-Defendant is obligated to indemnify and hold Crossclaimant harmless against any and all losses, claims, liabilities or other damages incurred in this action relating to matters embraced by the indemnity provisions.

60.     Crossclaimant contends that the INDEMNITY AND HOLD HARMLESS provision of the Master Contract obligates Cross-Defendant to indemnify Crossclaimant for the causes of action asserted against Crossclaimant in Plaintiffs' FAC.

61.     Cross-Defendant breached the duty to indemnify by refusing to indemnify the District and/or denying the District's tender.

62.     Crossclaimant has performed all conditions, covenants and promises required by it in accordance with the terms and conditions of the Master Contract.

63.     The District has suffered damages as a result of the breach, including but not limited to the cost of defense of the present action, and the costs, including attorney's fees, to commence this cross action.  The District is entitled to recover these damages and to be fully defended in the action brought by the Plaintiffs herein.

## X.  NINTH CAUSE OF ACTION

### Breach of Master Contract of Duty to Defend

### (Against Cross-Defendant TOBINWORLD)

64.     Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

65.     Crossclaimant entered into a written Master Contract with Cross-Defendant as alleged herein, which contract provides for Cross-Defendant's duty to defend Crossclaimant with regards to the causes of action brought against it by Plaintiffs.

///

66.     Under the INDEMNITY AND HOLD HARMLESS provision of the Master Contract, Cross-Defendant is obligated to indemnify and hold Crossclaimant harmless against any and all losses, claims, liabilities or other damages incurred in this action relating to matters embraced by the indemnity provisions.

67.     Crossclaimant contends that the INDEMNITY AND HOLD HARMLESS provision of the Master Contract obligates Cross-Defendant to defend Crossclaimant for the causes of action asserted against Crossclaimant in Plaintiffs' FAC.

68.     Cross-Defendant breached the duty to defend by denying the District's tender of defense.

69.     Crossclaimant has performed all conditions, covenants and promises required by it in accordance with the terms and conditions of the Master Contract.

70.     The District has suffered damages as a result of the breach, including but not limited to the cost of defense of the present action, and the costs, including attorney's fees, to commence this cross action.  The District is entitled to recover these damages and to be fully defended in the action brought by the Plaintiffs herein.

## XI. TENTH CAUSE OF ACTION

### Professional Broker Negligence

### (Against DOES 51 through 75)

71.     Crossclaimant incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

72.     The Master Contract between the District and Cross-Defendant contained an "INSURANCE" provision, which provision obligates Cross-Defendant and DOES 51 through 75 to procure and maintain sufficient insurance against claims for injuries which may arise from, or in connection with performance under the Master Contract by Cross-Defendant and shall name the District as an additional insured for each required policy of insurance, including, but not limited to, Commercial General Liability and Professional Liability/Errors and Omissions, including Sexual Molestation and Abuse coverage.

73.    DOES 51 through 75 had a duty to procure insurance coverage according to the Master Contract's INSURANCE provision and name the District as an additional insured on any and all policies of insurance, including general liability and/or professional liability and/or sexual misconduct and abuse.  DOES 51 through 75 breached that duty by failing to procure such coverage for the benefit of the District.

74.    The District has suffered damages as a result of the breach, including but not limited to the cost of defense of the present action, and the costs, including attorney's fees, to commence this cross action.  The District is entitled to recover these damages and to be fully defended in the action brought by the Plaintiffs herein.

### PRAYER

**WHEREFORE**, Crossclaimant prays for relief on its Crossclaim as follows:

1.  For a judgment of this Court in favor of Crossclaimant in an amount sufficient to allow Crossclaimant to be fully indemnified and held harmless by Cross-Defendant from and against any losses suffered by Crossclaimant arising out of this litigation, including reasonable attorney's fees and costs and other expenses incurred herein, or by virtue of any judgment or order or liability rendered against it herein in favor of Plaintiffs or any other party, or by virtue of settlement expenses incurred by it in connection with the present case filed by Plaintiffs;

2.  For an Order and Judgment of this Court recognizing that Crossclaimant is entitled to express contractual indemnity and implied contractual indemnity and equitable indemnity from Cross-Defendants;

3.  For such Orders of Declaratory Relief as have been requested herein;

4.  For general damages, special damages, consequential damages, incidental damages and prejudgment interest, and recognizing an ongoing right to post-judgment interest until paid in full;

5.  For defense and indemnity in the present action;

6.  For such other relief as the Court may deem just and proper.

///

**THIRD-PARTY COMPLAINT AGAINST PHILADELPHIA INSURANCE COMPANIES**

COMES NOW third-party plaintiff ANTIOCH UNIFIED SCHOOL DISTRICT (hereinafter the "District" or "Third-Party Plaintiff") and alleges third-party claims and causes of action against Third-Party Defendants PHILADELPHIA INSURANCE COMPANIES, TOKIO MARINE SPECIALTY INSURANCE COMPANY and ROES 1 THROUGH 50 (collectively "Third-Party Defendants"), as follows:

## I.   GENERAL ALLEGATIONS

1.  Third-Party Plaintiff is a Defendant to the present underlying action having been named by Plaintiffs in their First Amended Complaint ("FAC") on file herein.

2.  Third-Party Plaintiff, at all relevant times herein, is and was a public entity, namely a unified school district, organized and existing pursuant to the laws of the State of California with its principal place of business within the County of Contra Costa.

3.  Defendant/Cross-Defendant TOBINWORLD, at all relevant times herein, is and was a nonprofit corporation, providing educational services to students with disabilities, with its principal place of business in Glendale, California.

4.  At all pertinent times, upon information and belief, Third-Party Defendant PHILADELPHIA INSURANCE COMPANIES is and was an insurance company or a group of insurance companies, organized and/or existing under the laws of the State of California or another State, with its principal place of business in Bala Cynwyd, PA, but conducting business within the State of California.

5.  At all pertinent times, upon information and belief, Third-Party Defendant TOKIO MARINE SPECIALTY INSURANCE COMPANY is and was an insurance company or a group of insurance companies, organized and/or existing under the laws of the State of California or another State, with its principal place of business in Bala Cynwyd, PA, but conducting business within the State of California

6.  At all relevant times, each Third-Party Defendant was an agent, servant, employee, or insurer of one or more of the remaining Third-Party Defendants, and was

acting within the course and scope of said agency and/or employment.

7.    Third-party Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise of Third-Party Defendants designated herein as ROES 1 through 50, and therefore sues said Third-party Defendants by such fictitious names.  The District is ignorant of the true names and capacities of ROES 1 through 50 because it has not received all pertinent insurance documents and/or communications between or among Defendant/Crossdefendant Tobinworld and/or its insurance carrier(s) and/or broker(s).  The District will amend this Third-Party Complaint to allege their true names and capacities when ascertained.  The District is informed and believes that each such Third-Party Defendant is in some manner responsible for the injuries suffered by the District alleged herein.

8.    On or about July 28, 2016, Plaintiffs filed a First Amended Complaint ("FAC") for damages against TOBINWORLD, the District and others.  Third-party Plaintiff incorporates herein by reference Plaintiffs' FAC, without admitting any of the allegations contained therein, a copy of which is attached as Exhibit A.

9.    The FAC alleges that on or about May 9, 2013, M.M. began classes as a special education student in first grade assigned by the District to Cross-Defendant TOBINWORLD's school in Antioch, California.

10.   The FAC alleges that between May 2013 and May 2014, M.M. was physically and psychologically abused by TOBINWORLD's teachers and staff.  As against the District, Plaintiffs bring causes of action for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. section 794 et seq, discrimination under the Americans with Disabilities Act (42 U.S.C. 12131 et seq), negligence, and violation of California's Education Code section 220.  Plaintiffs allege that the District was on notice that TOBINWORLD was an unsafe educational environment that was likely to and did cause harm to M.M., but nonetheless they placed M.M. at TOBINWORLD's school. As a proximate result of the District's negligence, Plaintiffs incurred damages.

11.   At all times relevant hereto, responsibility for the instruction and

supervision of students was solely that of TOBINWORLD and its agents and/or employees and not that of the District.

12.    Plaintiffs allege that their injuries were proximately caused in whole or in part by the negligence of TOBINWORLD, and its agents and/or employees, and not that of the District.

13.    The conduct alleged in the FAC occurred at TOBINWORLD's school, while M.M. was in the care, custody and control of TOBINWORLD's agents or employees.

14.    The alleged negligence of TOBINWORLD includes, but is not necessarily limited to, negligently failing to supervise or train its employees to prevent improper restraints of M.M. and other forms of physical abuse and psychological abuse while M.M. was attending school.

15.    Plaintiffs further allege that by improperly restraining M.M, TOBINWORLD and its agents and/or employees unlawfully denied M.M. equal access to educational services and subjected him to a hostile educational environment by reason of his disability, causing him special and general damages. Defendants knew or should have known that its staff was physically and/or emotionally abusing M.M. causing him injuries.

16.    On or about January 23, 2014, the District and TOBINWORLD entered into a Master Contract for the purpose of providing special education and/or related services to special needs students in the District under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") and related California law, including California Education Code sections 56157, 56361 and 56365 et seq., and Title 5 of the California Code of Regulations section 3000 et seq.

17.    The Master Contract contained an INDEMNIFICATION AND HOLD HARMLESS provision, which indemnity provision states that Cross-Defendant will indemnify the District, and hold the District harmless, from and against any and all actions, claims, liens, damages, penalties, obligations or liabilities that may be

asserted in connection with Cross-Defendant's activities under the Master Contract or any other action by Cross-Defendant, its agents, officers, employees or invitees.  A true and correct copy of the Master Contract containing the Indemnity and Hold Harmless provision is attached hereto as "Exhibit B" and incorporated herein by this reference.

18.    The Master Contract also contained an INSURANCE provision, which provision obligates TOBINWORLD to procure and maintain insurance against claims for injuries which may arise from, or in connection with performance under the Master Contract by TOBINWORLD, its agents and/or employees, and that TOBINWORLD shall name the District as an additional insured for each required policy of insurance, including, but not limited to, Commercial General Liability and Professional Liability/Errors and Omissions, including Sexual Molestation and Abuse coverage.

19.    The District is informed and believes that TOBINWORLD procured general liability insurance through multiple carriers, including Third-Party Defendants TOKIO MARINE SPECIALTY INSURANCE COMPANY and PHILADELPHIA INSURANCE COMPANIES for the period December 5, 2012 through December 5, 2013 and December 5, 2013 through December 5, 2014 (Philadelphia Insurance Co. policy numbers PHPK 798979 and PHPK1104849).

20.    Upon information and belief, the District was named as an additional insured on all policies of insurance issued by Third-Party Defendants and any of the ROES 1 through 50, including but not limited to Third-Party Defendants' policies of insurance for the period December 5, 2012 through December 5, 2013 and December 5, 2013 through December 5, 2014, policy numbers PHPK 798979 and PHPK1104849, respectively.

21.    As a result of the claims asserted by the Plaintiffs against the District in the FAC, the District has been and will be exposed to and will incur losses and expenses through the time of trial and has and will continue to incur attorney's fees and costs herein, and may also come to be held liable for Plaintiffs' claims and thereby

suffer further losses.

22.     After it was served with the lawsuit, the District tendered the claim to Third-Party Defendants on numerous occasions, asking that Third-Party Defendants defend and indemnify the District pursuant to the insurance policies issued to TOBINWORLD per the Master Contract's provisions and naming the District as an additional insured under said policies.

23.     On May 11, August 24, and September 19, 2016, the District sent correspondence to Third-Party Defendants, requesting that the insurance carriers defend the District with respect to Plaintiffs' FAC. The first two requests were ignored. Counsel for Third-Party Defendant Philadelphia Insurance Companies responded to the District's third request, indicating that the tender is under review.

24.     To date, neither Third-Party Defendants, Cross-Defendant, nor any of Cross-Defendant's other carriers has accepted the District's tender of defense and indemnity.

## II.  FIRST CAUSE OF ACTION
### Breach of Insurance Contract
### (Against all Third-Party Defendants)

25.     Third-party Plaintiff incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth in this cause of action.

26.     Upon information and belief, Third-Party Plaintiff entered into a written Master Contract with TOBINWORLD as alleged herein, which contract provided for various obligations to be performed by TOBINWORLD, including but not limited to an obligation to obtain sufficient liability insurance and naming the District as additional insured under said policies of insurance.

27.     Upon information and belief, Third-Party Defendants TOKIO MARINE SPECIALTY INSURANCE COMPANY and PHILADELPHIA INSURANCE COMPANIES provided liability coverage to Third-Party Plaintiff as an additional insured for all pertinent times, including but not limited to the period of December 5,

2012 through December 5, 2013 and December 5, 2013 through December 5, 2014 (policy numbers PHPK 798979 and PHPK1104849).

28.    The District has performed all conditions, covenants and promises required by it in accordance with the terms and conditions of the aforementioned Master Contract and any and all insurance agreements.

29.    Third-party Defendants have breached their obligations under the insuring agreements by failing to provide appropriate coverage and/or sufficient insurance and/or failing to accept the District's tender of defense and indemnity.

30.    As a direct and proximate result of the aforementioned breaches of contract, the District has been damaged in a sum which is currently unascertainable but which exceeds $75,000.

31.    Third-Party Plaintiff has been required to retain the services of an attorney to prosecute this action and is entitled to an award of reasonable attorney's fees and costs incurred herein, both pursuant to any statute, rule, or contractual provision allowing for the same, and also as special damages incurred herein.

### III. SECOND CAUSE OF ACTION

### Declaratory Relief on Duty to Defend

### (Against all Third-Party Defendants)

32.    The District incorporates by inference each and every allegation contained within this Third Party Complaint as though fully set forth in this cause of action.

33.    An actual controversy exists between the District and Third-Party Defendants and ROES 1 through 50 as to their respective rights and duties under the relevant insurance policy in respect to the duty to defend in the underlying action brought by the Plaintiffs herein.  Therefore, the District seeks a declaration of rights and responsibilities that Third-Party Defendants TOKIO MARINE SPECIALTY INSURANCE COMPANY and PHILADELPHIA INSURANCE COMPANIES and ROES

///

1 through 50 are obligated to accept the tender of defense and to defend the District in the action brought against it by the Plaintiffs.

## IV. THIRD CAUSE OF ACTION
### DECLARATORY RELIEF ON DUTY TO INDEMNIFY
### (Against all Third-Party Defendants)

34.   The District incorporates by inference each and every allegation contained within this Third Party Complaint as though fully set forth in this cause of action.

35.   An actual controversy exists between the District and Third-Party Defendants TOKIO MARINE SPECIALTY INSURANCE COMPANY and PHILADELPHIA INSURANCE COMPANIES and ROES 1 through 50 as to their respective rights and duties under the relevant insurance policy in respect to the duty to defend in the underlying action brought by the Plaintiffs herein.  Therefore, the District seeks a declaration of rights and responsibilities that Third-Party Defendants and ROES 1 through 50 are obligated to accept the tender of defense and to defend the District in the action brought against it by the Plaintiffs.

## PRAYER

**WHEREFORE**, Third-Party Plaintiff prays for relief on its Third-Party Complaint as follows:

1.  For general damages in an amount to be proven at trial;

2.  For special damages in an amount to be proven at trial;

3.  For defense and indemnity in the present action;

4.  Costs of suit;

5.  Attorney's fees as appropriate;

///

///

///

6. Declaratory relief, and

7. For such other relief as the Court may deem just and proper.

Dated: October___, 2016          **LEONE & ALBERTS**

_____

LEONE A. LEONE, ESQ.
IOANA R. MONDESCU, ESQ.
Attorneys for Defendant and Third-Party
Plaintiff ANTIOCH UNIFIED SCHOOL
DISTRICT

PETER W. ALFERT, SBN 83139
HINTON ALFERT & KAHN LLP
200 Pringle Ave., Suite 450
Walnut Creek, California  94596
Telephone: (925) 279-3009
Facsimile:  (925) 279-3342

TODD BOLEY, SBN 68119
MAUREEN FELDMAN, SBN 298417
ZOYA YARNYKH, SBN 258062
2381 Mariner Square Drive, Suite 280
Alameda, CA  94501
Telephone: (510) 836-4500
Facsimile: (510) 649-5170

Attorneys for PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHELE SMITH, M.M., a minor by and through his guardian ad litem MICHELE SMITH,

           Plaintiffs

    v.

ANTIOCH UNIFIED SCHOOL DISTRICT, TOBINWORLD, SARAH FORGHANI, ANDREW ALTES and DOES 1 - 30,

        Defendants.

Case No. 3:16-cv-01676-RS

**FIRST AMENDED COMPLAINT FOR DAMAGES**

**JURY TRIAL REQUESTED**

Plaintiffs MICHELE SMITH and M.M., a minor by and through his guardian ad litem

MICHELE Smith, allege as follows:

## I.  JURISDICTION AND VENUE

1.  Jurisdiction over Plaintiffs' federal law claims is founded upon 28 U.S.C. § 1331 [federal question jurisdiction] and 28 28 U.S.C. § 1343(a)(3) [federal civil rights jurisdiction]. The Defendants reside in California and the incidents giving rise to this action occurred in Contra Costa County, California.

/ / /

**EXHIBIT A**

## II. INTRADISTRICT ASSIGNMENT

2. This case arose in Contra Costa County, California and, pursuant to Rule 3-3(c) of the Local Rules of the Northern District of California, should be assigned to either the San Francisco or Oakland Division of the Northern District.

## III. PARTIES

3. Plaintiff MICHELE Smith (hereinafter "SMITH") is a resident of the City of Antioch, County of Contra Costa, California. She brings this action on her own behalf and as guardian for her son, M.M.

4. Plaintiff M.M. is a minor and a resident of the City of Antioch, County of Contra Costa, California.

5. Defendant Antioch Unified School District ("AUSD") is a public entity duly incorporated and operating under California law as a school district. AUSD is a public entity subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, the requirements of California state law requiring full and equal access to public facilities pursuant to Government Code §§ 11135 and 4450, et seq., and to all other legal requirements referred to in this Complaint.

6. In enacting Title II of the Americans with Disabilities Act, Congress validly abrogated state sovereign immunity, and thus AUSD may be sued pursuant to Title II. *Hason v. Med. Bd. of California*, 279 F.3d 1167, 1170 (9th Cir. 2002). By accepting Federal Rehabilitation Act funds, AUSD waived its sovereign immunity under the Eleventh Amendment to claims brought pursuant to §504 of the Rehabilitation Act of 1973. Pugliese v. Dillenberg, 346 F.3d 937 (9th Cir. 2003).

7. Defendant Tobinworld ("TOBINWORLD") is a California non-profit corporation established in 1977, with a principal place of business at 920 East Broadway, Glendale, CA 94010. TOBINWORLD maintains a campus located at 2330 Country Hills Drive, Suite 102, Antioch, CA 94509 known as TOBINWORLD 2. TOBINWORLD purports to provide comprehensive educational services. All actions alleged herein by TOBINWORLD involve events occurring at TOBINWORLD 2, in Contra Costa County.

8.  Sara Forghani ("FORGHANI") is a resident of the City of Concord, County of Contra Costa, California. FORGHANI is and has been, at all relevant times, an administrator of TOBINWORLD. All actions alleged herein by "FORGHANI" were in the course and scope of her employment with TOBINWORLD. As such, TOBINWORLD is vicariously liable for the actions of FORGHANI alleged herein.

9.  Defendant Andrew Altes ("ALTES") is a resident of the City of Brentwood, County of Contra Costa, California. All actions alleged herein by ALTES were in the course and scope of his employment with TOBINWORLD. As such, TOBINWORLD is vicariously liable for the actions of ALTES alleged herein.

10. The true names and capacities of defendants sued as DOES 1 through 30 are unknown to Plaintiffs and Plaintiffs pray leave to amend to allege the true names and capacities when they are ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the Doe defendants was an agent, employee and/or representative of one or more of the named Defendants and was acting within the course and scope of said agency and/or employment, and as such, each Defendant is legally responsible for the actions, inactions, acts, errors, conduct and/or omissions of every other Defendant. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants aided, assisted, approved, acknowledged and/or ratified the wrongful acts committed by Defendants as alleged herein, and that Plaintiffs' damages, as alleged herein, were legally caused by such Defendants.

11. At all relevant times set forth herein, all Defendants acted in concert and as the agent of one another.

12. Plaintiffs have complied with the claim presentation requirements of the California Government Tort Claims Act, Cal. Gov. Code §§ 810 *et seq.*

### IV. FACTUAL ALLEGATIONS

13. M.M. was born on August 23, 2006. M.M. has been diagnosed with Autism. He has also been diagnosed with asthma, seizures, bipolar disorder, ADHD, sensory processing disorder, mood disorder, chromosome six deletion and four gene deletions.

14. MICHELE SMITH is M.M.'s mother. During all relevant times herein, M.M. lived with MICHELE SMITH.

15. Because of his disabilities, M.M. has received special education services selected by, paid for and coordinated through the Antioch Unified School District ("AUSD").

16. On or about May 9, 2013, M.M. began as a special education student assigned by AUSD to TOBINWORLD. Specifically, M.M. was assigned to the TOBINWORLD 2 location on Country Hills Drive in Antioch, CA.

17. Plaintiffs are informed and believe and thereon allege that AUSD placed M.M. in TOBINWORLD due to his disabilities.

18. Plaintiffs are informed and believe and thereon allege that but for M.M.'s disabilities, M.M. would have been placed by AUSD at another school within the District.

19. M.M. began TOBINWORLD as a 1st grade student.

20. Plaintiffs are informed and believe and thereon allege that TOBINWORLD receives substantial direct and indirect federal funding assistance. Tobinworld's website notes that "Tobinworld students are funded by public school districts through the state-reimbursed NPS funding model." NPS refers to nonpublic, nonsectarian schools that provide services to public school students with disabilities.

21. AUSD paid for M.M. to receive special education services at Tobinworld.

22. Prior to M.M.'s placement at TOBINWORLD by AUSD, AUSD had placed other students with special needs at TOBINWORLD.

23. AUSD was aware that prior to M.M.'s attendance at Tobinworld, he had never been physically restrained at school.

24. TOBINWORLD claims to have expertise in providing behavioral education for children and young adults. TOBINWORLD enrolls students classified as severely emotionally disabled, autistic, or developmentally disabled.

25. TOBINWORLD advertises and claims to use a program philosophy that integrates special education with behavioral psychology and claims that it carries out individualized academic and behavioral programs for each student.

Case 3:16-cv-01676-RS   Document 50   Filed 07/28/16   Page 5 of 31

26. TOBINWORLD advertises and claims to address behavior problems with a consistent behavioral and educational program with the goal of returning the student to public school or to a competitive or sheltered work opportunity.

27. TOBINWORLD advertises and claims that their goal, whenever feasible, is to return students to public school or to a competitive or sheltered work opportunity.

28. TOBINWORLD advertises and claims to use a state of the art behavior modification system.

29. Prior to MM's attendance at TOBINWORLD he had never been determined to be a danger to himself or others in any educational setting.

30. Prior to M.M.'s attendance at TOBINWORLD, he had never been physically restrained at school.

31. Less than two weeks after M.M. began attending TOBINWORLD, TOBINWORLD personnel began improperly restraining M.M. for excessive amounts of time.

32. Between May 9, 2013 and May 30, 2014, M.M. was improperly restrained without justification by TOBINWORLD personnel on dozens of occasions. TOBINWORLD staff frequently improperly restrained plaintiff M.M. without justification for excessive periods of time, sometimes as long as 30 minutes.

33. At the time AUSD placed M.M. at Tobinworld, AUSD made promises to SMITH upon M.M.'s enrollment that it would keep her informed about her son's academic, social, and emotional progress and advise her promptly if any problems or issues occurred.

34. Plaintiffs are informed and believe and thereon allege that AUSD and TOBINWORLD repeatedly failed to inform SMITH that M.M. had been improperly restrained without justification during school.

35. FORGHANI, as principal, is a managing agent of TOBINWORLD.

36. Plaintiffs are informed and believe and thereon allege that TOBINWORLD failed to supervise FORGHANI to ensure that she provided proper training to TOBINWORLD personnel to ensure that M.M.'s behavior would be redirected using the least restrictive means necessary.

37. Plaintiffs are informed and believe and thereon allege that TOBINWORLD failed to supervise FORGHANI to ensure that she provided proper training to TOBINWORLD personnel so that physical restraint would only be used as a method of last resort.

38. Plaintiffs are informed and believe and thereon allege that TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel failed to provide training on how to redirect M.M. using the least restrictive means necessary.

39. Plaintiffs are informed and believe and thereon allege that TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel failed to provide adequate training to teachers, aides and other staff on how to properly restrain students, including M.M., if no less restrictive means was possible.

40. Plaintiffs are informed and believe and thereon allege that TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel failed to use safety protocols when restraining students, including M.M.

41. TOBINWORLD personnel, including ALTES, used improper restraint techniques known to cause harm to children, including putting intentional strain on known pressure points on the child's body.

42. TOBINWORLD personnel also used a "basket hold" restraint technique, which is known to be a danger to the health and safety of children.

43. Plaintiffs are informed and believe and thereon allege that TOBINWORLD employed persons as a Behavior Specialist and/or Behavioral Analyst at the TOBINWORLD II campus who lacked the required California certifications for their behavioral work with publically placed students while M.M. attended.

44. Plaintiffs are informed and believe and thereon allege that TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel directed and coached personnel, including ALTES, to improperly restrain M.M. for minor rule infractions.

/ / /

/ / /

/ / /

45. Plaintiffs are informed and believe and thereon allege that TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel, as part of their business practices, directed and coached personnel, including ALTES, to restrain students, including M.M., when other less restrictive means of redirecting behavior were available.

46. Plaintiffs are informed and believe and thereon allege that in order to create documentation which would ostensibly justify the use of physical force and restraint on students, including M.M., TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel directed and coached personnel, including ALTES, as part of their business practices to complete incident reports containing mandatory, specific and prescribed language describing that the student was "a danger to himself and others" even when this was not true.

47. Plaintiffs are informed and believe and thereon allege that TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel directed and coached personnel, including ALTES, as part of their business practices to record on incident reports that students, including M.M., were "prompted" or "redirected" to their desk or seat, when in fact students, including M.M., were being forcefully taken down, pinned down and improperly restrained without justification.

48. Plaintiffs are informed and believe and thereon allege that TOBINWORLD, FORGHANI, and other TOBINWORLD administrative personnel directed and coached personnel, including ALTES, as part of their business practices to document that students, including M.M., were "prompted" or "redirected" "utiliz(ing) approved techniques," when in fact the techniques used were inappropriate, not the least restrictive methods possible, unsafe and caused physical and emotional harm.

49. Plaintiffs are informed and believe and thereon allege that FORGHANI required TOBINWORLD personnel as part of their business practices to improperly restrain students, including M.M., without justification resulting in the excessive and unnecessary application of painful and injurious physical force.

/ / /

50. Plaintiffs are informed and believe and thereon allege that as a result of these instructions, TOBINWORLD personnel as part of their business practices frequently improperly restrained students, including M.M., without justification for excessive periods of time. FORGHANI received regular reports of these improper restraints applied to students without justification, including M.M., for excessive amounts of time.

51. Plaintiffs are informed and believe and thereon allege that TOBINWORLD as part of their business practices provided inadequate restraint training to personnel and as a result they employed improper physical restraints which caused physical and emotional harm to students, including M.M.  FORGHANI was aware of the inadequacy of the training and the harmful effects of failing to adequately train her staff.

52. Plaintiffs are informed and believe and thereon allege that TOBINWORLD as part of their business practices improperly restrained students including M.M., without justification for excessive amounts of time, rather than using less restrictive behavioral interventions.  This agitated students, including M.M., thereby causing an increase in undesirable behavior and psychological harm, reducing the likelihood that the student could return to a public school placement.

53. During times M.M. was restrained at TOBINWORLD, he was physically, mentally and emotionally unable to participate in lessons or classroom activities, thus denied learning and access his curriculum.

54. During times M.M.'s TOBINWORLD teacher(s) restrained other students in M.M.'s classroom or observed restraint of other students in M.M's classroom, the teacher was not actively teaching, thus was denying M.M. time to learn and access his curriculum.

55. During times TOBINWORLD aides in M.M.'s classroom restrained other students in M.M.'s classroom or observed restraint of other students in M.M's classroom, the aides activities distracted M.M. and interrupted his lessons or classroom activities, thus their actions denied M.M. learning and access to his curriculum.

/ / /

/ / /

56. TOBINWORLD's repeated, excessive, and unjustified restraint of M.M. not only physically injured M.M. but also scared M.M., distracted him, and prevented him from learning and accessing his curriculum.

57. TOBINWORLD's repeated, excessive and unjustified restraint of other students attending TOBINWORLD scared M.M., distracted him, and prevented him from learning and accessing his curriculum.

58. Plaintiffs are informed and believe and thereon allege that as a result of TOBINWORLD's business practices including failure to adequately train staff, failure to redirect student behavior using the least restrictive means possible, and failure to adequately supervise and terminate staff, that a chaotic environment existed at TOBINWORLD which was disruptive to student learning and to student access of curriculum, including M.M.'s learning and curriculum access.

59. Plaintiffs are informed and believe and thereon allege that as a result of TOBINWORLD's business practices including failure to adequately train staff, failure to redirect student behavior using the least restrictive means possible, and failure to adequately supervise and terminate staff, that a chaotic environment existed at TOBINWORLD which necessitated the Antioch Police being called to the school campus on multiple occasions, causing distraction from M.M.'s learning and the learning of his fellow students.

60. Plaintiffs are informed and believe and thereon allege that non-disabled students attending AUSD schools were not restrained frequently, excessively, and without justification as M.M. was at TOBINWORLD.

61. Plaintiffs are informed and believe and thereon allege that non-disabled students attending AUSD schools were not forced to witness frequent, excessive or unjustified restraint of fellow students.

62. Plaintiffs are informed and believe and thereon allege that non-disabled students attending AUSD schools were provided a less chaotic environment than that which existed at TOBINWORLD.

///

63. Plaintiffs are informed and believe and thereon allege that non-disabled students attending AUSD schools required the Antioch Police to be called to their campus(es) less frequently than M.M. experienced at TOBINWORLD, thus providing them with a calmer educational environment and fewer distractions from learning than was provided to M.M. at TOBINWORLD.

64. Plaintiffs are informed and believe and thereon allege that M.M., due to his placement by AUSD at TOBINWORLD and his attendance at and experiences at TOBINWORLD, was provided a chaotic and inferior educational environment, significantly less conducive to his learning and access to curriculum than non-disabled students attending other AUSD schools.

65. TOBINWORLD's repeated and excessive use of restraint on M.M. and other students caused M.M. to suffer extreme emotional distress; he began having nightmares, defecating himself, wetting himself, and fearing school.

66. Plaintiffs are informed and believe and thereon allege that by agitating students, including M.M., to increase the undesirable behavior rather than to improve it, TOBINWORLD as part of their business practices attempted to prevent students, including M.M., from returning to public school.  This insured TOBINWORLD a long-term and continued income stream through continuing attendance of students, including M.M.

67. On April 29, 2014, SMITH observed M.M. prior to his departure from school, and she observed M.M.'s face was free of any bruising or injuries.

68. On the afternoon of April 29, 2014, M.M. was very agitated and upset when he stepped off the TOBINWORLD van at his home, after the conclusion of school.  Upon exiting the van, M.M. told his older sister that "Mr. Andy" hurt him during school.  M.M. reported that "Mr. Andy" slammed his head down on his desk and rubbed his cheek back and forth until he was hurt.  Further, M.M. reported that "Mr. Andy" did not release him even though he was crying and yelling to be let go.

69. Plaintiffs are informed and believe and thereon allege that "Mr. Andy" is defendant ALTES.

70. When SMITH arrived home on the afternoon of April 29, 2014, M.M. was still very agitated and upset. M.M. told SMITH, that ALTES slammed his head down on his desk during the school day.

71. M.M. further stated to his mother, SMITH, that after slamming M.M.'s head onto the desk, that M.M. would not allow him to get up or lift up his head.  M.M. explained that while ALTES had his head pinned to the desk that he rubbed M.M.'s face on the desk, causing an abrasion on his cheek.

72. SMITH observed the abrasion on M.M.'s check and took a photograph of the abrasion shortly after M.M. departed from TOBINWORLD's van.

73. On or about April 29, 2014, M.M. was 8 years old.  He was approximately 4 feet 5 inches tall and weighed approximately 60 pounds.

74. On or about April 29, 2014, ALTES was 24 years old.  He was approximately 5 feet 9 inches tall and weighed approximately 200 pounds.

75. The actions of ALTES in slamming a M.M.'s head onto a desk, pushing M.M.'s head down so he could not lift it, and rubbing M.M.'s face back and forth across the desk to the point of causing a visible abrasion were not appropriate to a special education classroom and instead caused a physical injury as well as a significant and enduring psychological injury.

76. ALTES subjected M.M. to psychological and physical abuse on April 29, 2014.

77. ALTES was physically rough with M.M. on other occasions, including punching M.M. in the chest.

78. No TOBINWORLD employee filed a report of suspected child abuse regarding M.M. at any time, including on April 29, 2014, when M.M. was visibly injured.

79. While attending TOBINWORLD, M.M. witnessed ALTES and other TOBINWORLD personnel be physically rough with other children, including hitting or slapping other children, pinning other children to their desks, or throwing children onto the floor.

80. While attending TOBINWORLD, M.M. witnessed ALTES and other TOBINWORLD employees slam another child's head onto her desk in such a rough way that she had a nose bleed from the blow.

81. On or about May 1, 2014, Antioch Police Department was dispatched to TOBINWORLD regarding the incident of assault which occurred on or about April 29, 2014 in which M.M. was the victim and ALTES was the perpetrator.

82. On or about May 2, 2014, shortly after M.M.'s April 29, 2014 assault and battery by ALTES, ALTES was observed exhibiting similar violent behavior toward other children at TOBINWORLD.  This violent behavior by ALTES was reported by a behaviorist who recommended that M.M. be removed from TOBINWORLD.

83. TOBINWORLD's frequent and extended use of restraint time resulted in M.M. regularly being deprived time to learn or take part in class activities.

84. AUSD, TOBINWORLD, FORGHANI, and ALTES all had an obligation to protect the children in their care, including M.M.

85. AUSD, TOBINWORLD, FOGHANI and ALTES were aware of M.M. special needs and educational needs and all owed a special duty of care to M.M., who was an Autistic 8 year old child entrusted to them daily to meet his educational, social, and physical and emotional needs.

86. Plaintiffs are informed and believe and thereon allege that TOBINWORLD should have disciplined FORGHANI and ALTES or terminated their employment for their actions but failed to do so.

87. Plaintiffs are informed and believe and thereon allege that TOBINWORLD and TOBINWORLD employees, including but not limited to FORGHANI and ALTES, failed to report instances of abuse as required under mandatory reporting laws and regulations.

88. Plaintiffs are informed and believe and thereon allege that TOBINWORLD and TOBINWORLD employees, including but not limited to FORGHANI and ALTES, concealed M.M.'s abuse from law enforcement and others.

89. Plaintiffs are informed and believe and thereon allege that AUSD was on notice and knew that Tobinworld had a pattern and practice of violently restraining special needs students who were not a danger to themselves or to others including throwing them to the floor,

/ / /

holding their heads down onto the floor or desks for long periods of time, hitting students and placing noxious agents on or around the mouths of students.

90. It was foreseeable to defendants that TOBINWORLD's practices would harm plaintiffs and in fact did harm plaintiff M.M. physically, emotionally, psychologically and educationally and caused SMITH extreme emotional upset and harm.

91. Plaintiffs are informed and believe and thereon allege that AUSD was notified on multiple occasions that M.M. was being restrained at TOBINWORLD.

92. AUSD had a responsibility to place M.M. in a safe and appropriate learning environment, free from hostility, harm, or discrimination.

93. Plaintiffs are informed and believe and thereon allege that AUSD received information from multiple sources, including parents and clinicians, that TOBINWORLD used excessive and unwarranted restraint and force against students.

94. Plaintiffs are informed and believe and thereon allege that AUSD was on notice that Tobinworld failed to provide proper training to employees to ensure that M.M.'s behavior would be redirected using the least restrictive means necessary.

95. Plaintiffs are informed and believe and thereon allege that AUSD was on notice that Tobinworld failed to supervise its employees to ensure that physical restraint would only be used as a method of last resort.

96. Plaintiffs are informed and believe and thereon allege that AUSD was on notice that Tobinworld employees failed to provide adequate training to teachers, aides and other staff on how to properly restrain students, including M.M., if no less restrictive means was possible.

97. Plaintiffs are informed and believe and thereon allege that AUSD was on notice that Tobinworld employees used improper restraint techniques known to cause harm to children, including using pressure points on the child's body to inflict pain and that AUSD was on notice that Tobinworld employees frequently improperly restrained students, including M.M., without justification for excessive periods of time.

///

98. Plaintiffs are informed and believe and thereon allege that AUSD was on notice through receipt of incident reports documenting these excessive restraints applied to students without justification, including M.M., for excessive amounts of time

99. Plaintiffs are informed and believe and thereon allege that AUSD was on notice that Tobinworld was failing the goal of returning students to public schools due to increased behaviors brought on by Tobinworld's excessive restraints and improper discipline.

100.    Prior to April 29, 2014, the date on which M.M. had his head slammed on the desk by ALTES, AUSD was aware of other AUSD students and their families reporting that the students were bruised and harmed by TOBINWORLD employees.

101.    Prior to April 29, 2014, AUSD received reports of an AUSD student attending TOBINWORLD whose family reported to police that their child was assaulted  and covered with bruises while attending TOBINWORLD.

102.    Prior to April 29, 2014, AUSD received a report of an AUSD student attending TOBINWORLD who was improperly restrained by three TOBINWORLD employees who pushed the student to the floor, causing the child pain.

103.    Prior to April 29, 2014, AUSD received a report of an AUSD student attending TOBINWORLD who reported that the manner in which children were being restrained was improper, without justification, unnecessarily rough and physically harmful.

104.    AUSD had an obligation to protect the children it placed into Tobinworld's care, including M.M.

105.    Plaintiffs are informed and believe and thereon allege that AUSD employees failed to report instances of abuse as required under mandatory reporting laws and regulations.

106.    Plaintiffs are informed and believe and thereon allege that AUSD was on notice and knew that Tobinworld had a pattern and practice of violently restraining special needs students who were not a danger to themselves or to others and employing improper techniques such as throwing children to the floor, holding their heads down onto the floor or desks for excessive periods of time, hitting students and placing noxious agents on or around the mouths of students.

107.     Plaintiffs are informed and believe and thereon allege that despite AUSD having received reports from other families of AUSD special needs students that their children suffered harmed by TOBINWORLD staff, AUSD failed to  protect students it had placed at TOBINWORLD, including failing to notify parents, including SMITH, or removing M.M. from TOBINWORLD.

108.     Plaintiffs are informed and believe and thereon allege that AUSD was on notice through receipt of incident reports that M.M. was being improperly and excessively restrained at Tobinworld.

109.     AUSD had a mandatory duty to make a determination, prior to placing M.M., that the private placement complied with the requirements under Federal Law to provide M.M. with a free and appropriate education where he would not be treated with hostility, harmed or suffer discrimination based on his disability.

110.     Prior to M.M.'s placement at Tobinworld by AUSD, AUSD had placed other students with special needs at Tobinworld.

111.     Plaintiffs are informed and believe and thereon allege that AUSD received information from multiple sources, including but not limited to children, families, police, parents, other school districts, behaviorists and clinicians that Tobinworld used improper, excessive and unwarranted restraint and force against students.

112.     Plaintiffs are informed and believe and thereon allege that in 2013, prior to ALTES slamming of M.M., AUSD was notified by parents of other special needs children attending TOBINWORLD of their children being restrained by Tobinworld employees in such a manner as to cause bruising and injury.

113.     Plaintiffs are informed and believe and thereon allege that prior to April 29, 2014, AUSD was aware of other reports that the students were injured and harmed by Tobinworld employees.

114.     Plaintiffs are informed and believe and thereon allege that prior to April 29, 2014, AUSD received reports of an AUSD student attending Tobinworld whose family reported to  police that their child was assaulted  by Tobinworld staff.

115.    Plaintiffs are informed and believe and thereon allege that prior to April 29, 2014, AUSD received a report of an AUSD student attending Tobinworld who was improperly restrained by three Tobinworld employees who pushed the student to the floor, causing injury to the child.

116.    Plaintiffs are informed and believe and thereon allege that prior to April 29, 2014, AUSD received a report of an AUSD student attending Tobinworld who reported that the manner in which children were being restrained was improper, without justification, unnecessarily rough and physically harmful.

117.    Plaintiffs are informed and believe and thereon allege that although AUSD received reports of students being harmed by Tobinworld staff, AUSD failed to protect students it had placed at Tobinworld, including failing to notify parents, including SMITH, or removing students, including M.M., from Tobinworld.

118.    AUSD had a duty to provide M.M. with a safe and appropriate learning environment and to advise his mother of the notification it received that special needs students were being harmed by staff at Tobinworld.

119.    SMITH requested AUSD change M.M.'s placement following the April 29th incident. SMIITH requested that the placement be changed so M.M. could be in a safe school where SMITH did not have to worry about M.M. being abused.

120.    On or about July 14, 2014, AUSD denied SMITH'S request for a change in M.M.'s placement.

121.    Given M.M.'s limited ability to communicate, he was unable to describe the full extent of the physical and verbal abuse he suffered at Tobinworld at the time.

122.    AUSD had a responsibility to place M.M. in a safe and appropriate learning environment and to advise his mother and withdraw him from TOBINWORLD upon receiving notification that other special needs students were being harmed by staff at TOBINWORLD.

/ / /

/ / /

123.     While attending TOBINWORLD, M.M. suffered severe setbacks both emotionally and academically.  He began wetting and defecating himself, he had nightmares, he became easily agitated, and he became fearful.  M.M. also regressed academically while attending TOBINWORLD and lost much of his prior academic knowledge.

124.     Given M.M.'s limited ability to communicate, he was unable to describe the full extent of the physical and verbal abuse he witnessed and suffered.

125.     It was foreseeable to defendants and each of them that these practices would harm plaintiffs and in fact did harm plaintiff M.M. physically, emotionally, psychologically and educationally and caused SMITH extreme emotional upset and harm.

126.     The discovery of the fact that M.M. was subjected to abuse has caused SMITH to feel betrayed by the school and to feel extreme distress for the school's failure to prevent the abuse. SMITH suffered further when AUSD denied her request for a change of placement of M.M., leaving her distressed as she believed M.M. could not continue in an abusive and hostile environment at TOBINWORLD and further distressed that she was not timely presented with alternate free and appropriate public education options by AUSD.

127.     Smith has had to purchase numerous items to educate M.M. after his removal from Tobinworld.  She has spent money on work books, reading books, and flash cards as well as computer equipment to create and print worksheets for him.  She has further had to spend money to take him on educational outings and provide him opportunities to socialize with other children.  Smith has expended these funds to try to offset the education that M.M. should have been receiving at Tobinworld and through AUSD.

### V.  FIRST CLAIM FOR RELIEF

### (Violation of § 504 of the Rehabilitation Act of 1973;

### Plaintiff M.M. vs. Defendant TOBINWORLD)

128.     Plaintiffs incorporate and reallage by reference the foregoing paragraphs 1 through 127, inclusive, as if they were fully set forth herein.

129.     Plaintiff is informed and believes and therefore alleges that TOBINWORLD is and has been at all relevant times the recipient of federal financial assistance, and that they are

therefore subject to the provisions of 29 U.S.C. § 794 that prohibits recipients of federal financial assistance from denying equal access to its services to disabled persons.

130. By their actions or inactions in denying equal access to educational services and by subjecting Plaintiff M.M. to a hostile educational environment, TOBINWORLD has violated M.M.'s rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder.

131. TOBINWORLD created a hostile learning environment by repeatedly improperly and unnecessarily restraining M.M. more than two dozen times during his year of attendance at TOBINWORLD, and for restraining him for excessive periods of time.

132. TOBINWORLD has further created a hostile learning environment by and through the actions of ALTES. On or about April 29, 2014, ALTES' slammed M.M.'s head onto a desk, holding his head down for an extended period of time, and forcibly rubbing his check back and forth across the desk to the point of leaving a visible abrasion.

133. As a result of Defendant TOBINWORLD's failure to comply with their duty under §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, Plaintiff M.M. has suffered damages including special and general damages according to proof.

## VI. SECOND CLAIM FOR RELIEF

### (Violation of § 504 of the Rehabilitation Act of 1973;

### Plaintiff M.M. vs. Defendant AUSD)

134. Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 133, inclusive, as if they were fully set forth herein.

135. Plaintiff is informed and believes and therefore alleges that AUSD is and has been at all relevant times the recipient of federal financial assistance, and that they are therefore subject to the provisions of 29 U.S.C. § 794 that prohibits recipients of federal financial assistance from denying equal access to its services to disabled persons.

136. AUSD knowingly subjected M.M. to excessive restraint at TOBINWORLD based on his disabilities.

137.     AUSD failed to provide M.M. equal access to free and appropriate education based on his disabilities by placing him at TOBINWORLD knowing that he would be subjected to a hostile educational environment because of his disabilities

138.     AUSD failed to provide M.M. equal access to fee and appropriate education based on his disabilities by placing him at and keeping him at TOBINWORLD while knowing that TOBINWORLD provided a chaotic and inferior educational environment than that provided to non-disabled students attending other AUSD schools, and an environment significantly less conducive to M.M.'s learning and access to curriculum than non-disabled students attending other AUSD schools were provided by the District.

139.     AUSD failed to provide M.M. equal access to free and appropriate education based on his disabilities by continuing his placement at TOBINWORLD despite the knowledge that special needs students, including M.M., were being abused by TOBINWORLD staff.

140.     As a result of Defendant AUSD's failure to comply with their duty under §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, Plaintiff M.M. has suffered damages including special and general damages according to proof.

## VII.   THIRD CLAIM FOR RELIEF

### (Discrimination in Violation of the Americans with Disabilities Act;

### Plaintiff M.M. vs. Defendant AUSD)

141.     Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 140, inclusive, as if they were fully set forth herein.

142.     Effective January 26, 1992, Plaintiff M.M. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990.  Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, section 201 of the ADA.

143.     Pursuant to 42 U.S.C. § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity.  M.M. was as all relevant times herein a qualified individual with a disability as therein defined.

144.    AUSD has failed in its responsibilities under Title II to provide services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that the educational services were provided on an equal basis to M.M., a child with disabilities, and free from hostility toward him because of his disability.

145.    AUSD has further failed in its responsibilities under Title II to provide it services, programs and activities in a full and equal manner to disabled persons as described hereinabove by placing M.M. at TOBINWORLD and into a hostile educational environment.

146.    AUSD has further failed in its responsibilities under Title II to provide  services, programs and activities in a full and equal manner to disabled persons as described hereinabove by continuing M.M.'s placement at TOBINWORLD, knowing that M.M. was being improperly restrained without justification for excessive amounts of time, and subjected to a hostile educational environment.

147.    As a result of Defendant AUSD's failure to comply with their duties under the ADA, and the regulations promulgated thereunder, Plaintiff M.M. has suffered damages including special and general damages according to proof.

### VIII.    FOURTH CLAIM FOR RELIEF

### (Unruh Act;

### Plaintiff M.M. vs. Defendant TOBINWORLD)

148.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 147, inclusive, as if they were fully set forth herein.

149.    The Unruh Civil Act, Cal. Civ. Code § 51 *et seq*., provides that all persons are entitled to full and equal services in all business establishments no matter what their, *inter alia*, disability, and that no business establishment shall discriminate against persons based on disability.

///

150.    Civil Code § 52(a) states that whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51 . . . is liable for each and every offense.

151.    Plaintiff M.M., based on his disabilities, was deprived of advantages, privileges, and services of his school.  TOBINWORLD was aware of this discrimination, which was intentional.

152.    The abuse by ALTES and other TOBINWORLD officials and personnel caused M.M. severe psychological and physical trauma.

153.    TOBINWOLRD and its officials and school personnel, were aware of the abuse perpetrated by ALTES and did nothing to prevent it, which constitutes willful and affirmative misconduct.

154.    As a proximate result of TOBINWORLD's negligent supervision of ALTES and other personnel, Plaintiff has suffered damages including special and general damages according to proof.

### IX. FIFTH CLAIM FOR RELIEF

**(Unfair Business Practices, California Code §17200;**

**Plaintiff M.M. and SMITH vs. Defendant TOBINWORLD)**

155.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 154, inclusive, as if they were fully set forth herein.

156.    California Business and Professions Code § 17200 *et seq*. prohibits business practices constituting an ongoing unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

157.    TOBINWORLD's acts and practices, including but not limited to, advertising and claiming to use a program philosophy that integrates special education with behavioral psychology, advertising and claiming that they carry out individualized academic and behavioral programs for each student, advertising and claiming to use a state of the art behavior modification system, and advertising and claiming to address behavior problems with a consistent behavioral and educational program with the goal of returning the student

/ / /

to public school or to a competitive or sheltered work opportunity constitute violations of California Business and Professions Code § 17200 *et seq.*

158.    As a direct result of Defendant's aforementioned unlawful, unfair and fraudulent business acts and unfair, deceptive, untrue and misleading advertising, Plaintiffs have suffered discrimination, injury, and damages.

159.    As a direct result of TOBINWORLD's aforementioned unlawful, unfair and fraudulent business acts, including repeated excessive restraining of M.M. and physically and emotionally damaging M.M. and TOBINWORLD's unfair, deceptive, untrue and misleading advertising about TOBINWORLD's use of state of the art behavioral modification systems and having appropriate specialists design individualized behavioral plans, Plaintiffs have had to remove M.M. from attending Tobinworld and have suffered economic injuries by having to purchase multiple items to educate M.M. in lieu of Tobinworld educating M.M.

160.    Defendants have engaged and continue to engage in unlawful, unfair and fraudulent business acts, thus authorizing the issuance of equitable relief.

161.    Defendants have engaged in unlawful, unfair and fraudulent business acts against disabled citizens as defined in Cal. Bus. & Prof. Code § 17206.1 (b)(2) and are subject to enhanced civil penalties.

## X.  SIXTH CLAIM FOR RELIEF

### (Battery; Plaintiff M.M. vs. Defendant ALTES)

162.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 161, inclusive, as if they were fully set forth herein.

163.    The use of force, as alleged herein, by Defendant ALTES against Plaintiff M.M. constituted battery.

164.    At no time did M.M. consent to the touching and force alleged herein.

165.    As a proximate result of Defendant ALTES illegal battery, the minor M.M. has suffered damages, including special and general damages according to proof.

/ / /

## XI. SEVENTH CLAIM FOR RELIEF

### (False Imprisonment; Plaintiff M.M. vs. Defendant ALTES)

166.   Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 165, inclusive, as if they were fully set forth herein.

167.   The use of improper restraint, as alleged herein, by Defendant ALTES against Plaintiff M.M. intentionally deprived M.M. of freedom of movement.

168.   At no time did M.M. consent to the improper restraint and restriction on his freedom of movement alleged herein.

169.   ALTES improper restraint of M.M. constituted false imprisonment.

170.   As a proximate result of Defendant ALTES illegal false imprisonment, the minor M.M. has suffered damages including special and general damages according to proof.

## XII.   EIGHTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress;

### All Plaintiffs vs. Defendants TOBINWORLD, FORGHANI, and ALTES)

171.   Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 170, inclusive, as if they were fully set forth herein.

172.   FORGHANI, ALTES and TOBINWORLD had a duty to ensure that M.M.'s behavior and the behavior of other students would be redirected using the least restrictive means necessary and a duty to ensure that physical restraint of M.M. and other students would only be used as a method of last resort.

173.   FORGHANI, ALTES, and TOBINWORLD had a duty to disclose to SMITH information about the repeated, excessive, and unwarranted restraints of M.M. as well as ALTES' punching M.M. in the chest and ALTES' slamming of M.M.'s face onto a desk; FORGHANI, ALTES, and TOBINWORLD intentionally failed to disclose the information.

174.   TOBINWORLD, by and through its managing agents including FORGHANI, utilized business practices that encouraged the use of repeated, excessive and unwarranted restraints against M.M. and other disabled students.

/ / /

175.     TOBINWORLD, by and through its managing agents including FORGHANI, failed to make mandatory reports of abuse and withheld information about student treatment and restraint from SMITH and other parents.

176.     TOBINWORLD is vicariously liable for the intentional torts of its employees.

177.     The actions of TOBINWORLD, FORGHANI, and ALTES as alleged herein were outrageous, malicious, and intended to and did inflict emotional distress and humiliation upon Plaintiffs.

178.     It was foreseeable that repeatedly, excessively and unnecessarily restraining M.M., punching him in the chest, and slamming his head down, and would cause him severe emotional distress.

179.     It was foreseeable that TOBINWORLD, FORGHANI and ALTES' failure to make mandatory reports of abuse would increase the likelihood that SMITH would lack knowledge about the conditions existing in TOBINWORLD and the education of M.M. and prevent her from making informed decisions regarding M.M.'s treatment and education.

180.     It was foreseeable that TOBINWORLD, FORGHANI and ALTES' withholding information from SMITH would cause her more emotional distress than informing her of the incidents in the first place.

181.     It was foreseeable that the extreme distress would result from TOBINWORLD's aforementioned business plans and practices, treatment of M.M. and withholding of information from SMITH.

182.     As a proximate result of Defendants' intentional acts, Plaintiffs have incurred damages including special and general damages according to proof.

### XIII.   NINTH CLAIM FOR RELIEF

### (Negligence; All Plaintiffs vs. TOBINWORLD, FORGHANI and ALTES)

183.     Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 183, inclusive, as if they were fully set forth herein.

/ / /

/ / /

184.    Defendant TOBINWORLD had a duty to disclose to plaintiff SMITH the abusive conduct inflicted upon M.M. as described herein, but negligently failed to disclose such information.

185.    Defendants owed Plaintiffs a duty to exercise reasonable care in their interactions with them. These Defendants failed to exercise reasonable care in their actions as alleged herein.

186.    As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages including special and general damages according to proof.

## XIV.   TENTH CLAIM FOR RELIEF

### (Negligence; All Plaintiffs vs. AUSD)

187.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 186, inclusive, as if they were fully set forth herein.

188.    AUSD owed Plaintiffs a duty of care to place M.M. in an appropriate educational placement that was safe and free from danger and abuse.

189.    Plaintiffs are informed and believe and thereon allege that AUSD was on notice that Tobinworld was an inappropriate, unhealthy and unsafe educational environment in which children were physically restrained without justification and physically abused and that children attending Tobinworld had pain inflicted upon them as both a disciplinary and a pre-emptive control technique.

190.    Plaintiffs are informed and believe and thereon allege that AUSD was on notice of conduct by Tobinworld employees which was likely to - and in fact did - cause physical and psychological harm to students, including M.M..

191.    Plaintiffs are informed and believe and thereon allege that AUSD was on notice of the inappropriate, unhealthy and unsafe educational environment which existed at Tobinworld, but failed to investigate.

192.    Plaintiffs are informed and believe and thereon allege that AUSD failed to warn SMITH or M.M. of the risk of physical harm and psychological harm at Tobinworld.

/ / /

193.     Plaintiffs are informed and believe and thereon allege that AUSD failed to remove M.M. from Tobinworld even after AUSD was on notice of the inappropriate, unhealthy and unsafe environment students, including M.M., were being exposed to at Tobinworld.

194.     M.M. and SMITH were harmed by AUSD placement of M.M. at Tobinworld, as well as by AUSD's failure to warn M.M. and Smith of the risk of physical harm and psychological harm at Tobinworld

195.     AUSD is vicariously liable for the negligent conduct of its employees who were aware of the abuse of students at Tobinworld, who failed to investigate the abuse of students at Tobinworld, failed to warn M.M. or Smith of the danger of remaining in the school and failed to remove M.M. from the school.

196.     AUSD is vicariously liable for the negligent conduct of its employees who were aware of the abuse of students at Tobinworld but failed to report the abuse in violation of their mandatory duty under Penal Code 11165 *et seq.*

197.     As a proximate result of Defendants' negligent acts, Plaintiffs have incurred damages as alleged heretofore.

## XV.     ELEVENTH CLAIM FOR RELIEF
### (Negligent Hiring, Supervision or Retention;
### M.M. vs. Defendant TOBINWORLD and FORGHANI)

198.     Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 197, inclusive, as if they were fully set forth herein.

199.     At all relevant times, Defendant ALTES was an employee of TOBINWORLD.

200.     At all relevant times, FORGHANI was an administrator of TOBINWORLD and a supervisor of ALTES.

201.     Plaintiff M.M. was harmed by the actions of FORGHANI, ALTES and other TOBINWORLD employees as described herein.

202.     Defendant TOBINWORLD knew or should have known that ALTES and other TOBINWORLD employees improperly restrained M.M. without justification for excessive periods of time and that ALTES assaulted and battered M.M.

203.     Defendant TOBINWORLD knew or should have known that FORGHANI
permitted and encouraged TOBINWORLD employees to improperly restrain M.M. for long
periods of time.

204.     Defendant TOBINWORLD knew or should have known that FORGHANI
permitted and encouraged TOBINWORLD employees to batter M.M.

205.     Defendant TOBINWORLD failed to properly supervise FORGHANI and ALTES
and other TOBINWORLD employees.

206.     Defendant TOBINWORLD improperly retained FORGHANI and ALTES and other
TOBINWORLD employees after M.M. was frequently restrained and after M.M. was
assaulted and battered.

207.     TOBINWORLD's failure to supervise FORGHANI and ALTES and improper
retention of FORGHANI and ALTES was a substantial factor in causing M.M.'s harm.

208.     As a proximate result of Defendants' intentional acts, Plaintiffs have incurred
damages including special and general damages according to proof.

## XVI.   TWELFTH CLAIM FOR RELIEF

**(California Educational Code §220; Plaintiff M.M. vs. Defendant TOBINWORLD)**

209.     Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through
209, inclusive as if they were fully set forth herein.

210.     Section 220 of the Education Code provides: "[n]o person shall be subjected to
discrimination on the basis of disability . . . in any program or activity conducted by an
educational institution that receives, or benefits from, state financial assistance or enrolls
pupils who receive state student financial aid."

211.     A plaintiff may maintain an action for monetary damages against a school when the
plaintiff alleges that she suffered severe, pervasive conduct that effectively deprived the
plaintiff of the right of equal access to educational benefits and opportunities; the school
had actual knowledge of the conduct; and the school responded with deliberate
indifference. See, *e.g., Donovan v. Poway Unified School Dist.*, 167 Cal.App.4th 567, 603-
09 (2008).

212.     TOBINWORLD receives direct and indirect state funding for the education of M.M. and similar students.

213.     ALTES and other TOBINWORLD personnel subjected M.M. to severe and pervasive abuse.

214.     ALTES' and other TOBINWORLD personnel's conduct denied M.M. of the right to equal access to the educational benefits and opportunities (M.M. was denied learning time and opportunities when improperly restrained without justification for excessive amounts of time and further denied learning time and opportunities when he was without a school following his removal from TOBINWORLD and prior to AUSD's providing him home schooling or schooling at another educational setting).

215.     On information and belief, AUSD had knowledge of the likelihood of abuse of M.M. at TOBINWORLD but was deliberately indifferent when they placed him at TOBINWORLD and did not remove him from the abusive environment and did not promptly place him in an alternate learning environment free from hostility and abuse.

## XVII.  THIRTEENTH CLAIM FOR RELIEF

### (California Educational Code §220; Plaintiff M.M. vs. Defendant AUSD)

216.     Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 215, inclusive, as if they were fully set forth herein.

217.     Section 220 of the Education Code provides: "[n]o person shall be subjected to discrimination on the basis of disability . . . in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid."

218.     A plaintiff may maintain an action for monetary damages against a school when the plaintiff alleges that she suffered severe, pervasive conduct that effectively deprived the plaintiff of the right of equal access to educational benefits and opportunities; the school had actual knowledge of the conduct; and the school responded with deliberate indifference.  See, *e.g., Donovan v. Poway Unified School Dist.*, 167 Cal.App.4th 567, 603-09 (2008).

219.    Plaintiffs are informed and believe and thereon allege that AUSD, by assigning

M.M. to Tobinworld and maintaining M.M.'s placement at Tobinworld, subjected M.M. to

severe abuse.

220.    AUSD and its employees were aware that M.M. had previously been physically and

psychologically abused in school by a teacher employed by AUSD and that as a result of

that abuse, M.M. was especially susceptible to further injury if placed in an abusive of

hostile environment.  Given this circumstance, AUSD should have been particularly

vigilant with respect to the selection of M.M.'s placement at another educational site and in

providing oversight to ensure that the placement was safe and appropriate for M.M.

221.    AUSD's conduct in assigning M.M. to Tobinworld Tobinworld denied M.M.'s right

to equal access to educational benefits and opportunities (M.M. regressed academically,

socially, and developmentally while at Tobinworld).

222.    Plaintiffs are informed and believe and thereon allege that AUSD had knowledge of

Tobinworld's abuse of special education students, but was deliberately indifferent to that

abuse.

223.    As a result of Defendant AUSD's failure to comply with their duty under California

Education Code §220, and the regulations promulgated thereunder, Plaintiff M.M. has

suffered damages including special and general damages according to proof.

### XVIII. FOURTEENTH CLAIM FOR RELIEF

**(Violation of Mandatory Duty; M.M. vs. FORGHANI and ALTES)**

224.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through

223, inclusive, as if they were fully set forth herein.

225.    Teachers, instructional aides, classified personnel and administrative officers are

mandatory reporters as defined by Penal Code § 11165.7. As such, TOBIN WORLD

personnel, FORGHANI, and ALTES were under a mandatory duty to report to an agency

specified in § 11165.9 whenever, in his professional capacity or within the scope of his

employment, he has knowledge of or observes a child whom the mandated reporter knows

or reasonably suspects has been the victim of child abuse or neglect. Penal Code § 11166.

A mandatory reporter is required to report suspected child abuse immediately or as soon as practicably possible by telephone and the mandated reporter shall prepare and send, fax, or electronically transmit a written follow-up report thereof within 36 hours. *Ibid.*

226.     FORGHANI and ALTES, together with other TOBINWORLD teachers, instructional aides, and administrators were aware that M.M. was the victim of abuse as defined by Penal Code §§ 11165.3 and 11165.4. However, none of these mandatory reporters complied with their duty to report the abuse to the agency as specified in Penal Code § 11165.9.

227.     The mandatory reporter statutes impose a mandatory duty to report suspected or actual child abuse. Furthermore, the statutes were enacted to protect minors from such abuse as was suffered by minor M.M. in this case, and the breach in complying with the mandatory reporter duties contributed to M.M.'s injuries.

228.     As a proximate result of Defendants' actions, M.M. has incurred damages as alleged heretofore.

## XIX.   JURY DEMAND

Plaintiffs hereby demand that this matter be tried to a jury.

## XX.   PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1.     General and special, compensatory, and/or other damages to Plaintiffs for injury, emotional distress, medical expenses, educational harm, loss of earnings;

2.     Appropriate equitable relief;

3.     Civil penalties of $2,500 for each unlawful business practice;

4.     Additional penalties of $2,500 for each unlawful business practice against a disabled person pursuant to Business and Professions Code §17206.1;

5.     Punitive damages against FORGHANI and ALTES;

6.     Attorneys' fees and costs; and

7.     Such other and further relief as the court deems just and proper.

/ / /

1    SUBMITTED BY:

2

3    Dated: July 28, 2016                     LAW OFFICES OF TODD BOLEY

4

5                                             By:___Todd Boley___/s/_____
                                                   TODD BOLEY
6                                                  Attorney for Plaintiffs

7

8    Dated: July 28, 2016                     HINTON ALFERT LP

9

10                                            By:___Peter Alfert___/s/_____
                                                   PETER W. ALFERT
11                                                 Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Contract Year 2013-14                                          Contract Number: _____
<u>Contra Costa Special Education Local Plan Area</u>

NONPUBLIC SCHOOL/AGENCY/RELATED SERVICES PROVIDER:

## Tobinworld II

### <u>NONPUBLIC, NONSECTARIAN SCHOOL/AGENCY SERVICES MASTER CONTRACT</u>

*AUTHORIZATION FOR MASTER CONTRACT AND GENERAL PROVISIONS*

1. MASTER CONTRACT
   This Master Contract is entered into this  day of, between the <u>Contra Costa SELPA</u> (hereinafter referred to as "LEA") and _____ <u>Tobinworld II</u> _____ (hereinafter referred to as "CONTRACTOR") for the purpose of providing special education and/or related services to LEA pupils with exceptional needs under the authorization of California Education Code sections 56157, 56361 and 56365 et seq. and Title 5 of the California Code of Regulations section 3000 et seq., AB490 (Chapter 862, Statutes of 2003) and AB1858 (Chapter 914, Statutes of 2004). It is understood that this Master Contract does not commit LEA to pay for special education and/or related services provided to any LEA pupil, or CONTRACTOR to provide such special education and/or related services, unless and until an authorized LEA representative approves the provision of special education and/or related services by CONTRACTOR pursuant to an Individualized Education Plan (hereinafter referred to as "IEP"), Individual Family Service Plan (hereinafter referred to as IFSP) or Rehabilitation Act Section 504 plan.

   <u>SELPA Collaborative:</u> The LEA is a member of the Bay Area SELPA Collaborative. Nonpublic schools and nonpublic agencies that are geographically located in one of the participating SELPAs agree to participate in this collaborative process to establish a uniform contract for identified services and standards. The established system provides NPA/Ss with an opportunity to have input to the development of the process, contract issues, etc., and a simplified, standard process for rate negotiation with the participating SELPAs. Issues listed on the Rate Schedule portion of this Master Contract may be reviewed on an annual basis upon request of the CONTRACTOR using the established Bay Area SELPA Collaborative system. CONTRACTOR agrees that the rates set forth in this Master Contract will remain unchanged from July 1 through June 30 of the term of contract, with no changes in the services provided, unless changed in a duly executed amendment to this Master Contract signed by both parties. Increases in rates will be considered on an annual basis and remain unchanged for the term of the contract from July 1 through June 30, with no changes in level of service provided without written approval by both parties.

   NPA/Ss that are not geographically located in a participating SELPA should negotiate rates with their geographically corresponding SELPA(s). The LEA will contact the corresponding SELPA to verify established rates. Increases in rates will be considered on an annual basis and remain unchanged for the following year from July 1 through June 30, with no changes provided without written approval by both parties.

   Any CONTRACTOR not participating as a member of the Bay Area SELPA Collaborative shall individually negotiate rates following local SELPA and/or LEA procedures. Those CONTRACTORs shall notify the SELPA with whom they contract of any proposed rate changes effective July 1 by May 1 of the preceding year.

   The Bay Area SELPA Collaborative Chair shall maintain, annually update and disseminate to all LEAs, NPS/As who are members of the Collaborative, a master rate schedule reflecting such NPS/A rates.

   Upon CONTRACTOR's acceptance of a pupil referred by the LEA, the LEA shall complete an Individual Services Agreement (hereinafter referred to as "ISA") as specified in the LEA Procedures which shall identify the provider of each service required by the pupil's IEP/IFSP. For purposes of enrollment, the LEA must provide

**EXHIBIT B**

approval before any authorization for payment can be made. Such authorization may be provided electronically, by telecommunications, by mail or by fax. Unless otherwise agreed in writing, or in the pupil's ISA, CONTRACTOR acknowledges its obligation to provide all services specified in the pupil's IEP/IFSP. The LEA acknowledges its responsibility to pay for all services rendered to LEA pupils by CONTRACTOR. The ISA shall be executed within ninety (90) days of an LEA pupil's enrollment. (Education Code Section 56366(c)(1)) LEA and CONTRACTOR shall enter into an ISA for each LEA pupil served by CONTRACTOR. CONTRACTOR shall notify the LEA in writing in advance of providing any service(s) when CONTRACTOR is unable to meet the requirements of this Master Contract or of any Individual Services Agreement.

Unless placement is made pursuant to an Office of Administrative Hearings (hereinafter referred to as "OAH") order, a lawfully executed agreement between LEA and parent or authorized by LEA for a transfer student pursuant to California Education Code section 56325, LEA is not responsible for the costs associated with nonpublic school placement until the date on which an IEP team meeting is convened, the IEP team determines that a nonpublic school placement is appropriate, and the IEP is signed by the student's parent.

## 2. CERTIFICATION AND LICENSES

CONTRACTOR shall be certified by the California Department of Education (hereinafter referred to as "CDE") as a nonpublic, nonsectarian school/agency. All nonpublic school and nonpublic agency services shall be provided consistent with the area of certification specified by CDE Certification and as defined in California Education Code, section 56366 *et seq* and within the professional scope of practice of each provider's license, certification and/or credential. A current copy of CONTRACTOR's nonpublic school/agency certification or a waiver of such certification issued by the CDE pursuant to Education Code section 56366.2 must be provided to LEA on or before the date this contract is executed by CONTRACTOR. This Master Contract shall be null and void if such certification or waiver is expired, revoked, rescinded, or otherwise nullified during the effective period of this Master Contract. Total pupil enrollment shall be limited to capacity as stated on CDE certification.

In addition to meeting the certification requirements of the State of California, CONTRACTOR that operates a program outside of this State <u>shall be certified or licensed by that state</u> to provide, respectively, special education and related services and designated instruction and related services to pupils under the federal Individuals with Disabilities Education Act (20 U.S.C. Sec. 1400 et seq.).

If CONTRACTOR is a licensed children's institution (hereinafter referred to as "LCI"), CONTRACTOR shall be licensed by the state, or other public agency having delegated authority by contract with the state to license, to provide nonmedical care to children, including, but not limited to, individuals with exceptional needs. The LCI must also comply with all licensing requirements relevant to the protection of the child, and have a special permit, if necessary, to meet the needs of each child so placed. If the CONTRACTOR operates a program outside of this State, CONTRACTOR must obtain all required licenses from the appropriate licensing agency in both California and in the state where the LCI is located.

A current copy of CONTRACTOR's licenses and nonpublic school/agency certifications, or a validly issued waiver of any such certification must be provided to LEA on or before the date this Master Contract is executed by CONTRACTOR. CONTRACTOR must immediately (and under no circumstances longer than three (3) calendar days) notify LEA if any such licenses, certifications or waivers are expired, suspended, revoked, rescinded, challenged pursuant to an administrative or legal complaint or lawsuit, or otherwise nullified during the effective period of this Master Contract. If any such licenses, certifications or waivers are expired, suspended, revoked, rescinded, or otherwise nullified during the effective period of this Master Contract, this Master Contract shall be null and void.

Notwithstanding the foregoing, if current (re)certification documents are not available through no fault of the NPS/A, this Master Contract shall remain in effect until such documents are made available to the NPS/A, which shall in turn submit copies of same to the LEA within five (5) business days of receipt by the NPS/A. The NPS/A shall, within five (5) business days of any change in the status of its approved capacity to serve a specific number of pupils notify the LEA of the change.

## 3. COMPLIANCE WITH LAWS, STATUTES, REGULATIONS

During the term of this Master Contract the CONTRACTOR and the LEA shall comply with all applicable federal and state laws and regulations relating to the provision of special education and related services, and facilities for individuals with exceptional needs. CONTRACTOR shall also comply with all policies pursuant to the Local Plan, unless, taking into consideration all of the surrounding facts and circumstances, a policy or policies or a portion of a policy does not reasonably apply to CONTRACTOR. CONTRACTOR hereby acknowledges and agrees that it accepts all risks and responsibilities for its failure to comply with LEA policies and shall indemnify LEA under the provisions of section 17 of this Master Contract for all liability, loss, damage and expense (including reasonable attorneys' fees) resulting from or arising out of CONTRACTOR's failure to comply with LEA policies. The CONTRACTOR shall comply with those policies, relating to among other things, the provision of special education and/or related services, facilities for individuals with exceptional needs, LEA pupil enrollment and transfer, LEA pupil inactive status, corporal punishment, pupil discipline, and positive behavior interventions.

4.  **RIGHT TO REPORT MASTER CONTRACT VIOLATIONS**
    CONTRACTOR and LEA acknowledge and understands that either party may report to the CDE any violations of the provisions of this Master Contract; and that this may result in the suspension and/or revocation of CDE nonpublic school/agency certification pursuant to California Education Code section 56366.4(a) or action by the CDE against the LEA.

5.  **TERM OF MASTER CONTRACT**
    The term of this Master Contract shall be from July 1, 2013 to June 30, 2014 (Title 5 California Code of Regulations section 3062(a)). Neither the CONTRACTOR nor the LEA is required to renew this Master Contract in subsequent contract years. However, the parties acknowledge that any subsequent Master Contract is to be re-negotiated prior to June 30, 2014. If the subsequent Master Contract has not been executed prior to June 30, 2013, this Contract shall remain in force and effect until terminated as provided herein or a new Master Contract is executed.

6.  **INTEGRATION/CONTINUANCE OF CONTRACT FOLLOWING EXPIRATION OR TERMINATION**
    This Master Contract includes the LEA Procedures and each Individual Services Agreement and they are incorporated herein by this reference. Upon written request, LEA agrees to make all of its policies and procedures available to CONTRACTOR, either electronically or by hard copy. This Master Contract supersedes any prior or contemporaneous written or oral understanding or agreement with respect to the terms set forth in this Master Contract. This Master Contract may be amended only by written amendment executed by both parties. Notwithstanding the foregoing, the LEA may modify the LEA procedures from time to time without the consent of CONTRACTOR.

    CONTRACTOR shall provide the LEA with information as requested in writing to secure a Master Contract or a renewal.

    At a minimum, such information shall include copies of teacher credentials and clearance, insurance documentation and CDE certification. The LEA may require additional information as applicable. In the event that this Master Contract expires or terminates, CONTRACTOR shall continue to be bound to all of the terms and conditions of the most recent executed Master Contract between CONTRACTOR and LEA for so long as CONTRACTOR is servicing authorized students at the discretion of the LEA.

7.  **INDIVIDUAL SERVICES AGREEMENT**
    This contract shall include an Individual Services Agreement (ISA) developed for each LEA pupil to whom CONTRACTOR is to provide special education and/or related services. An ISA shall only be issued for LEA pupils enrolled with the approval of the LEA pursuant to Education Code section 56366 (a)(2)(A).

    ISAs are void upon termination or expiration of the Master Contract. In the event that this Master Contract expires or terminates, CONTRACTOR and the LEA shall continue to be bound to all of the terms and conditions of the most recent executed ISAs between CONTRACTOR and LEA for so long as CONTRACTOR is servicing authorized LEA pupils, until such time as a new Master Contract is executed.

Any and all changes to a LEA pupil's educational placement/program provided under this Master Contract and/or an ISA shall be made solely on the basis of a revision to the LEA pupil's IEP/IFSP. At any time during the term of this Master Contract, a LEA pupil's parent, CONTRACTOR, or LEA may request a review of a LEA pupil's IEP/IFSP subject to all procedural safeguards required by law, including notice to and participation by the CONTRACTOR in the IEP Team meeting.

Unless otherwise provided in this Master Contract, the CONTRACTOR shall provide all services specified in the IEP/IFSP unless the CONTRACTOR and the LEA agree otherwise in the ISA.   (California Education Code sections 56366(a) (5) and 3062(e)).  In the event the CONTRACTOR is unable to provide a specific service at any time during the term of the ISA, the CONTRACTOR shall notify the LEA in writing within five (5) business days of the last date a service was provided.

If a parent or LEA contests the termination of an ISA by initiating a due process proceeding with the California Office of Administrative Hearings (hereinafter referred to as "OAH"), CONTRACTOR shall abide by the "stay-put" requirement of state and federal law unless the parent agrees otherwise or an interim alternative educational placement is deemed lawful and appropriate by LEA or OAH.

Disagreements between LEA and CONTRACTOR concerning the formulation of an ISA or the Master Contract may be appealed to the local SELPA office prior to appeal to the State Superintendent of Public Instruction pursuant to the provisions of California Education Code section 56366 (C) (2).

## 8.  DEFINITIONS
The following definitions shall apply for purposes of this contract:

a.   The term "CONTRACTOR" means a nonpublic, nonsectarian school/agency certified by the California Department of Education and its officers, agents and employees.

b.   The term "authorized LEA representative" means a LEA administrator designated to be responsible for nonpublic school/agencies.  It is understood, a representative of the Special Education Plan Local Area (SELPA) of which the LEA is a member is an authorized LEA representative in collaboration with the LEA.  The LEA maintains sole responsibility for the contract, unless otherwise specified in the contract.

c.   The term "credential" means a valid credential, life diploma, permit, or document in special education or pupil personnel services issued by, or under the jurisdiction of, the State Board of Education if issued prior to 1970 or the California Commission on Teacher Credentialing, which entitles the holder thereof to perform services for which certification qualifications are required as defined in Title 5 of the California Code of Regulations section 3001(j).

d.   The term "qualified" means that a person holds a certificate, permit or other document equivalent to that which staff in a public school are required to hold to provide special education and designated instruction and services and has met federal and state certification, licensing, registration, or other comparable requirements which apply to the area in which he or she is providing special education or related services, including those requirements set forth in Title 34 of the Code of Federal Regulations sections 200.56 and 200.58, and those requirements set forth in Title 5 of the California Code of Regulations Sections 3064 and 3065, and adheres to the standards of professional practice established in federal and state law or regulation, including the standards contained in the California Business and Professions Code.

Nothing in this definition shall be construed as restricting the activities in services of a graduate needing direct hours leading to licensure, or of a student teacher or intern leading to a graduate degree at an accredited or approved college or university, as authorized by state laws or regulations. (Title 5 of the California Code of Regulations Section 3001 (y)).

e     The term "license" means a valid non-expired document issued by a licensing agency within the Department of Consumer Affairs or other state licensing office authorized to grant licenses and authorizing the bearer of the document to provide certain professional services, including but not limited to mental health and board and care services at a residential placement, or refer to themselves using a specified professional title. If a license is not available through an appropriate state licensing agency, a certificate of registration with the appropriate professional organization at the national or state level which has standards established for the certificate that are equivalent to a license shall be deemed to be a license as defined in Title 5 of the California Code of Regulations section 3001(r).

f.     Parent means a biological or adoptive parent, unless the biological or adoptive parent does not have legal authority to make educational decisions for the child, a guardian generally authorized to act as the child's parent or authorized to make educational decisions for the child, an individual acting in the place of a biological or adoptive parent, including a grandparent, stepparent, or other relative with whom the child lives, or an individual who is legally responsible for the child's welfare, a surrogate parent, a foster parent if the authority of the biological or adoptive parent to make educational decisions on the child's behalf has been specifically limited by court order in accordance with Code of Federal Regulations 300.30(b)(1) or (2). Parent does not include the state or any political subdivision of government or the nonpublic school or agency under contract with the LEA for the provision of special education or designated instruction and services for a child. (California Education Code section 56028).

g.     The term "days" means calendar days unless otherwise specified.

h.     The phrase "billable day" means a school day in which instructional minutes meet or exceed those in comparable LEA programs.

i.     The phrase "billable day of attendance" means a school day as defined in California Education Code Section 46307, in which a student is in attendance and in which instructional minutes meet or exceed those in comparable LEA programs unless otherwise stipulated in an IEP or ISA.

j.     It is understood that the term "Master Contract" also means "Agreement" and is referred to as such in this document.

## ADMINISTRATION OF CONTRACT

9.  **NOTICES**
All notices provided for by this contract shall be in writing. Notices shall be mailed by first class mail deposited with the United States Postal Service or delivered by hand and shall be effective as of the date of receipt by addressee. All notices mailed to LEA shall be addressed to:

| | |
|---|---|
| Name: | Laura VanDuyn, Ed.D. |
| District: | Contra Costa SELPA |
| Address: | 2520 Stanwell Drive, Suite 270 |
| City, State Zip: | Concord, CA 94520 |
| Phone: | 925-827-0949 x14 |

Notices to CONTRACTOR shall be addressed as indicated on signature page.

10. **MAINTENANCE OF RECORDS**
All records shall be maintained by CONTRACTOR as required by state and federal laws and regulations. Notwithstanding the foregoing sentence, CONTRACTOR shall maintain all records for at least five (5) years after

the termination of this Master Contract. For purposes of this Master Contract, "records" shall include, but not be limited to: pupil records as defined by California Education Code section 49061(b); cost data records as set forth in Title 5 of the California Code of Regulations section 3061; registers and roll books of teachers and/or daily service providers; daily service logs and notes and other documents used to record the provision of related services including supervision; daily service logs and notes used to record the provision of services provided through additional instructional assistants, NPA behavior intervention aides, and bus aides; absence verification records (parent/doctor notes, telephone logs, and related documents) if the CONTRACTOR is funded for excused absences, however, such records are not required if positive attendance is required; bus rosters; staff lists specifying credentials held and documents evidencing other staff qualifications, social security numbers, dates of hire, and dates of termination; records of employee training and certification, staff time sheets; non-paid staff and volunteer sign-in sheets; transportation and other related services subcontracts; school calendars; bell/class schedules when applicable; liability and worker's compensation insurance policies; state nonpublic school and/or agency certifications; by-laws of current board of directors/trustees, if incorporated; statement of income and expenses; general journals; cash receipts and disbursement books; general ledgers and supporting documents; documents evidencing financial expenditures; federal/state payroll quarterly reports; and bank statements and cancelled checks or facsimile thereof.

CONTRACTOR shall maintain LEA pupil records in a secure location to ensure confidentiality and prevent unauthorized access. CONTRACTOR shall maintain a current list of the names and positions of CONTRACTOR's employees who have access to confidential records. CONTRACTOR shall maintain an access log for each LEA pupil's record which lists all persons, agencies, or organizations requesting or receiving information from the record and the legitimate interests thereof (California Education Code Section 49064). Such log shall be maintained as required and include the name, title, agency/organization affiliation, and date/time of access for each individual requesting or receiving information from the LEA pupil's record. Such logs need to record access to the LEA pupil's records by: (a) the LEA pupil's parent; (b) an individual to whom written consent has been executed by the LEA pupil's parent; or (c) employees of LEA or CONTRACTOR having a legitimate educational interest in requesting or receiving information from the record (Education Code Section 49064). CONTRACTOR/LEA shall maintain copies of any written parental concerns granting access to student records. For purposes of this paragraph, "employees of LEA or CONTRACTOR" do not include subcontractors. CONTRACTOR shall grant parents access to pupil records, and comply with parents' requests for copies of pupil records, as required by state and federal laws and regulations. CONTRACTOR agrees, in the event of school or agency closure, to forward LEA pupil records to LEA within five (5) business days. These records shall include, but not be limited to, the LEA pupil's current transcripts, IEP/IFSPs, and reports. LEA and/or SELPA shall have access to and receive copies of any and all records upon request within five (5) business days.

**11. SEVERABILITY CLAUSE**
   If any provision or portion of a provision of this Master Contract is held, in whole or in part, to be unenforceable for any reason, the remainder of that provision and of the entire Master Contract shall be severable and remain in effect.

**12. SUCCESSORS IN INTEREST**
   This Master Contract binds CONTRACTOR's successors and assignees.

**13. VENUE AND GOVERNING LAW**
   The laws of the State of California shall govern the terms and conditions of this Master Contract with venue in the County where the LEA is located.

**14. MODIFICATIONS AND AMENDMENTS**
   This Master Contract may be modified or amended by the LEA to conform to administrative and statutory guidelines issued by any state, federal or local governmental agency. The LEA shall provide the CONTRACTOR thirty (30) days notice of any such changes or modifications made to conform to administrative or statutory guidelines and a copy of the statute or regulation upon which the modification or changes are based.

**15. TERMINATION OF MASTER CONTRACT AND/OR INDIVIDUAL SERVICES AGREEMENT**
This Master Contract may be terminated with or without cause by either the CONTRACTOR or LEA. To terminate the Master Contract either party shall give twenty (20) days prior written notice (California Education Code Section 56366(a)(4)). At the time of termination, CONTRACTOR shall provide to LEA any and all documents CONTRACTOR is required to maintain under this Master Contract. ISAs are void upon termination of this Master Contract, as provided in Section 5 or 6. CONTRACTOR or LEA may terminate an ISA for cause. To terminate the ISA, either party shall give twenty (20) days prior written notice.

**16. INSURANCE**
CONTRACTOR shall procure and maintain for the duration of the Master Contract insurance against claims for injuries to persons or damages to property, which may arise from or in connection with performance under this Master Contract by CONTRACTOR, its agents, representatives, or employees.

Prior to final approval of this Master Contract, CONTRACTOR shall deliver to the LEA a certificate of insurance for each required policy with insurers and additional insured policy endorsements for the comprehensive general liability insurance and comprehensive automobile liability insurance. If at any time said policies of insurance lapse or become canceled, this MASTER CONTRACT shall become void. The acceptance by LEA of the above-required insurance does not serve to limit the liability or responsibility of the insurer or CONTRACTOR.

A.  Insurance coverage shall be at least as broad as:
1.  Insurance Services Office Commercial General Liability coverage (occurrence form CG 0001).
2.  Insurance Services Office form number CA 0001 (Ed. 1/87) covering Automobile Liability, code 1 (any auto).
3.  Workers' Compensation insurance as required by the state in which services are performed and Employer's Liability Insurance with limits of $2,000,000/$2,000,000/$2,000,000.

B.  CONTRACTOR shall maintain limits of insurance no less than:
1.  Commercial General Liability: $2,000,000 per occurrence for bodily injury and property damage, personal injury and completed operations.
2.  Automobile Liability: $2,000,000 combined single limit.
3.  Professional Liability/Errors and Omissions coverage, _including_ Sexual Molestation and Abuse coverage, unless that coverage is afforded elsewhere in the Commercial General Liability Insurance: $1,000,000 per occurrence/$2,000,000 aggregate.
   3a. For Residential Treatment Centers coverage shall be $3,000,000 per occurrence/$6,000,000 aggregate.

For all insurance coverage procured by CONTRACTOR, the following terms apply:

C.  Any deductibles or self-insured retentions above $25,000 must be declared to and approved by the LEA. At its option, LEA may require the CONTRACTOR, at the CONTRACTOR's sole cost, to: (a) cause its insurer to reduce to levels specified by the LEA or eliminate such deductibles or self-insured retentions as respects to the LEA, its officials and employees, or (b) procure a bond guaranteeing payment of losses and related investigations, claim administration and defense expenses.

D.  The general liability and automobile liability policies are to contain, or be endorsed to contain, the following provisions:

1.  The LEA, its subsidiaries, officials and employees are to be covered as additional insured as respects:  liability arising out of activities performed by or on behalf of CONTRACTOR; products and completed operations of the CONTRACTOR; premises owned, occupied or used by the CONTRACTOR; or automobiles owned, leased, hired or borrowed by the CONTRACTOR.  The coverage shall contain no special limitations on the scope of protection afforded to the LEA, its subsidiaries, officials and employees.
2.  For any claims related to the services, the CONTRACTOR's insurance coverage shall be primary insurance as respects the LEA, its subsidiaries, officials and employees. Any insurance or self-insurance maintained by the LEA, its

subsidiaries, officials and employees shall be excess of the CONTRACTOR's insurance and shall not contribute with it.

3. Each insurance policy required by this clause shall be endorsed to state that coverage shall not be suspended, voided, canceled by either party, reduced in coverage or in limits except after thirty (30) days prior written notice by certified mail, return receipt requested, has been given to the LEA.

E.  Insurance is to be placed with insurers admitted by the State of California and with a current A.M. Best's rating of no less than A-: VII, unless otherwise acceptable to the LEA.

F.  The CONTRACTOR shall furnish the LEA with original or photocopies of endorsements effecting coverage required by this clause. The endorsements are to be signed by a person authorized by that insurer to bind coverage on its behalf. All Certificates of Insurance shall reference the contract number, the name of school or agency submitting the contract number, the name of school or agency submitting the certificate, an indication if the school or agency is an NPS or NPA, and the location of the school or agency submitting the certificate.

If LEA or CONTRACTOR determines that change in insurance coverage obligations under this section is necessary, either party may reopen negotiations to modify the insurance obligations.

## 17. INDEMNIFICATION AND HOLD HARMLESS

CONTRACTOR shall indemnify and hold LEA and its Board Members, administrators, employees, agents, attorneys, volunteers, and subcontractors ("LEA Indemnities") harmless against all liability, loss, damage and expense (including reasonable attorneys' fees) resulting from or arising out of this Master Contract or its performance, to the extent that such loss, expense, damage or liability was caused by sole negligence or willful misconduct of CONTRACTOR, including, without limitation, its agents, employees, subcontractors or anyone employed directly or indirectly by it (excluding LEA and LEA Indemnities).

LEA shall indemnify and hold CONTRACTOR and its Board Members, administrators, employees, agents, attorneys, and subcontractors ("CONTRACTOR Indemnities") harmless against all liability, loss, damage and expense (including reasonable attorneys' fees) resulting from or arising out of this Master Contract or its performance, to the extent that such loss, expense, damage or liability was proximately caused by the gross negligence or willful act of LEA, including, without limitation, its agents, employees, subcontracts or anyone employed directly or indirectly by it (excluding CONTRACTOR and/or any CONTRACTOR indemnities).

LEA represents that it is self-insured in compliance with the laws of the state of California, that the self-insurance covers district employees acting within the course and scope of their respective duties and that its self-insurance covers LEA's indemnification obligations under this Master Contract.

## 18. INDEPENDENT CONTRACTOR

This Master Contract is by and between two independent entities that have an independent contractual relationship. CONTRACTOR shall provide all services under this Agreement as an independent contractor, and neither party shall have the authority to bind or make any commitment on behalf of the other.  Nothing contained in this Master Contract shall be deemed to create any association, partnership, joint venture or relationship of principal and agent, master and servant, or employer and employee between the LEA and CONTRACTOR and any of their employees, agents, affiliates or other representatives, or between the LEA and any individual assigned by CONTRACTOR to perform any services for the LEA. CONTRACTOR shall provide all services under this Master Contract as an independent contractor, and neither shall have the authority to bind or make any commitment on behalf of the other.

## 19. SUBCONTRACTING

CONTRACTOR shall provide written notification to LEA before subcontracting for special education and/or related services pursuant to this Master Contract.  CONTRACTOR shall enter into an initial subcontract only with a provider who is certified as a nonpublic school or nonpublic agency to delivery any of the instructional or related services contemplated under this Master Contract. The LEA and the CONTRACTOR shall maintain a copy of the written approval. CONTRACTOR shall provide all required clearances for its employees, including, but not

limited to fingerprint requirements, and tuberculosis.   When subcontracting with a nonpublic agency, CONTRACTOR shall not charge LEA a higher rate than its own approved collaborative rate.

Furthermore, when CONTRACTOR enters into subcontracts for the provision of special education and/or related services (including without limitation transportation) for any student, CONTRATOR shall cause each subcontractor to procure and maintain insurance during the term of each subcontract. Such subcontractor's insurance shall comply with the provisions of Section 16. Each subcontractor shall furnish the LEA with original endorsements and certificates of insurance effecting coverage required by Section 16. The endorsements are to be signed by a person authorized by that insurer to bind coverage on its behalf. The endorsements are to be on the forms provided by the LEA. All endorsements are to be received and approved by the LEA before the subcontractor's work commences. As an alternative to the LEA's forms, a subcontractor's insurer may provide complete, certified copies of all required insurance policies, including endorsements affective the coverage required by this Master Contract. All subcontractors must meet the requirements as contained in Section 46 Fingerprint Clearance Requirements and Section 47 Staff Qualifications of this Master Contract.

## 20. CONFLICTS OF INTEREST
CONTRACTOR and any member of its Board of Directors (or Trustees) shall avoid any relationship with LEA that constitutes or may constitute a conflict of interest pursuant to California Education Code Section 56042 and including, but not limited to, employment with LEA, provision of private party assessments and/or reports, and attendance at IEP/IFSP team meetings acting as a pupil's advocate.

Unless CONTRACTOR and LEA otherwise agree in writing, LEA shall neither execute an ISA with CONTRACTOR nor amend an existing ISA for a LEA pupil when a recommendation for special education and/or related services is based in whole or in part on assessment(s) or reports provided by CONTRACTOR to the LEA pupil without prior written authorization by LEA. This paragraph shall apply to CONTRACTOR regardless of when an assessment is performed or a report is prepared (i.e., before or after the LEA pupil is enrolled in CONTRACTOR's school/agency) or whether an assessment of the LEA pupil is performed or a report is prepared in the normal course of the services provided to the LEA pupil by CONTRACTOR.

When CONTRACTOR is a Nonpublic Agency, CONTRACTOR acknowledges that its authorized representative has read and understands Education Code section 56366.3 which provides, in relevant part, that no special education and/or related services provided by CONTRACTOR shall be paid for by LEA if provided by an individual who was an employee of LEA within the three hundred and sixty five (365) days prior to executing this Master Contract. This provision does not apply to any person who is able to provide designated instruction and services during the extended school year because he or she is otherwise employed for up to ten months of the school year by LEA.

## 21. NON-DISCRIMINATION
CONTRACTOR shall not unlawfully discriminate on the basis of actual or perceived race, color, national origin, ancestry, religion, age, marital status, pregnancy, physical or mental disability, medical condition, veteran status, gender, sex or sexual orientation, in employment or operation of its programs.

*EDUCATIONAL PROGRAM*

## 22. FREE AND APPROPRIATE PUBLIC EDUCATION (FAPE)
LEA shall provide CONTRACTOR with a copy of the IEP/IFSP including the Individualized Transition Plan (hereinafter referred to as "ITP") of each LEA pupil served by CONTRACTOR. Unless otherwise agreed to by the CONTRACTOR and the LEA, CONTRACTOR shall provide to each LEA pupil special education and/or related services (including transition services) within the nonpublic school or nonpublic agency consistent with the LEA pupil's IEP/IFSP and as specified in the ISA. If CONTRACTOR is a NPS, CONTRACTOR shall not accept an LEA pupil if it cannot provide or ensure the provision of the services outlined in the pupil's IEP/IFSP (California Education Code Section 56366.10(a)).

Unless otherwise agreed to between CONTRACTOR and LEA, CONTRACTOR shall be responsible for the provision of all appropriate supplies, equipment, or facilities for LEA pupils, as specified in the LEA pupil's

IEP/IFSP and ISA. Supplies and equipment purchased and/or provided by the LEA remains the property of the LEA. Supplies and/or equipment provided by the CONTRACTOR remains the property of the CONTRACTOR, if CONTRACTOR is not specifically reimbursed by the LEA for that specific supply or equipment. CONTRACTOR shall make no charge of any kind to parents for special education and/or related services as specified in the LEA pupil's IEP/IFSP and ISA (including, but not limited to, screenings, assessments, or interviews that occur prior to or as a condition of the LEA pupil's enrollment under the terms of this Master Contract).

Voluntary services and/or activities not necessary for the LEA pupil to receive a free appropriate public education shall not interfere with the LEA pupil's receipt of special education and/or related services as specified in the LEA pupil's IEP/IFSP and ISA.

### 23. GENERAL PROGRAM OF INSTRUCTION

**General Program**
All nonpublic school and nonpublic agency services shall be provided consistent with the area of certification specified by CDE Certification and as defined in California Education Code section 56366 et seq. No service will be provided by the CONTRACTOR outside of the CONTRACTOR's certification unless otherwise agreed to by the LEA.

When CONTRACTOR is a nonpublic school, CONTRACTOR's general program of instruction shall: (a) be consistent with LEA's standards regarding required courses of study and curriculum; (b) include curriculum that addresses mathematics, literacy and the use of educational, assistive technology and transition services; (c) be consistent with CDE's standards regarding the particular course of study and curriculum; (d) provide the services as specified in the LEA pupil's IEP/IFSP and ISA. The State Standards and coursework selected for each pupil shall be aligned with the pupil's IEP/IFSP to meet the individual pupil's needs. LEA pupils shall have access to the following educational materials, services, and programs that are consistent with each student's individualized educational program: (a) For kindergarten and grades 1-8 inclusive, state adopted standards-based, core curriculum and instructional materials; and for grades 9-12 inclusive, standards based, core curriculum and instructional materials used by any local educational agency that contracts with the non-public, non-sectarian school; (b) college preparation courses; (c) extracurricular activities, such as art, sports, music and academic clubs; (d) career preparation and vocational training, consistent with transition plans pursuant to state and federal law and; (e) supplemental assistance, including individual academic tutoring, psychological counseling, and career and college counseling (California Education Code 56366.10). CONTRACTOR's general program of instruction shall be described in writing and a copy provided to LEA prior to the effective date of this Master Contract.

When CONTRACTOR serves LEA pupils in grades nine through twelve inclusive, LEA shall provide to CONTRACTOR a specific list of the course requirements to be satisfied by LEA pupils leading toward graduation or completion of diploma requirements.

When CONTRACTOR is a nonpublic agency and/or related services provider, CONTRACTOR's general program of instruction and/or services shall be consistent with LEA and CDE guidelines and provided as specified in the LEA pupil's IEP/IFSP and ISA. The nonpublic agency providing Behavior Intervention services shall develop a written treatment plan that specifies the nature of its' nonpublic agency service for each LEA pupil within thirty (30) days of enrollment which shall be available upon request. CONTRACTOR shall immediately notify LEA in writing if no parent, guardian or adult care giver is present at the IEP meeting held to review and approve the treatment plan. CONTRACTOR shall provide to LEA a written description of the general program of instruction and/or services provided prior to the effective date of this Master Contract. Contractors providing Behavior Intervention services must have a trained Behavior Intervention Case Manager (BICM) or trained equivalent on staff.

Except for emergency situations requiring a change of location in order to continue the education of LEA pupils, school-based services may not be unilaterally converted by CONTRACTOR to a substitute program or provided at a location not specifically authorized by the IEP/IFSP team. Except for services provided by a contractor that is a licensed children's institution, all services not provided in the school setting require the presence of, or the prior written consent of a parent, guardian or adult care giver during the delivery of services. LCI contractors shall

ensure that appropriate and qualified residential or clinical staff is present during the provision of services under this Master Contract.

**Transportation Services.**
In the event that transportation services for a pupil served by CONTRACTOR pursuant to an Individual Services Agreement are to be provided by a party other than CONTRACTOR or the LEA or its transportation providers, such services shall be reflected in a separate agreement signed by the parties hereto, and provided to the LEA and SELPA Director by the CONTRACTOR. Except as provided below, CONTRACTOR shall compensate the transportation provider directly for such services, and shall charge the LEA for such services at the actual and reasonable rates billed by the transportation provider, plus a ten percent (.10) administrative fee, unless a "flat rate" is provided in the transportation contract. In the event that the transportation provider notifies the LEA or SELPA Director that CONTRACTOR is more than 90 days behind in payment for transportation services, LEA shall have the right, in its sole and exclusive discretion, but not the obligation, to make payment for such services directly to the transportation provider, and to deduct such payments from any sums owed to CONTRACTOR pursuant to this Master Contract and any Individual Services Agreement between the parties. In the event that the LEA makes direct payment of the transportation provider's charges, it shall be entitled to withhold both the transportation charges themselves and such additional amount as shall be reasonably necessary to compensate the LEA for the staff and other costs incurred in making direct payment of those charges. The remedies provided to the LEA pursuant to this Paragraph shall not be exclusive. CONTRACTOR shall not include transportation through the use of services or equipment owned, leased or contracted through the LEA unless expressly provided in the Individual Services Agreement for the pupil transported.

When CONTRACTOR is a nonpublic agency, CONTRACTOR shall not provide transportation nor subcontract for transportation services for LEA pupil unless the LEA and the CONTRACTOR agree otherwise in writing.

## 24. INSTRUCTIONAL MINUTES
When CONTRACTOR is a nonpublic school, the total number of instructional minutes per school day provided by CONTRACTOR shall be at least equivalent to the number of instructional minutes per school day provided to LEA pupils at like grade level, attending LEA schools, unless otherwise specified in the pupil's IEP/IFSP, and shall be specified in the LEA pupil's ISA developed in accordance with the LEA pupil's IEP/IFSP.

For LEA pupils in grades pre-kindergarten through 12, unless otherwise specified in the LEA pupil's IEP/IFSP, the number of instructional minutes, excluding recess, lunch, and passing time, shall be at least the minimum as specified in Education Code Sections 46110-46147, and in no case will be less than the amount as specified in the IEP/IFSP. In addition, the total number of annual instructional minutes shall be at least equivalent to the total number of annual instructional minutes provided to LEA pupils attending LEA schools in like grade level unless otherwise specified in the LEA pupil's IEP/IFSP.

When CONTRACTOR is a nonpublic agency and/or related services provider, the total number of minutes per school day provided by CONTRACTOR shall be specified in the LEA pupil's ISA developed in accordance with the LEA pupil's IEP/IFSP.

## 25. CLASS SIZE
When CONTRACTOR is a nonpublic school, CONTRACTOR shall ensure that class size shall not exceed a ratio of one teacher per fourteen (14) pupils. Upon written approval by an authorized LEA representative, class size may be temporarily increased by a ratio of 1 teacher to sixteen (16) pupils when necessary to provide services to pupils with disabilities. For any billing period where the class size has exceeded sixteen (16) pupils for five consecutive school days, the CONTRACTOR shall have a 10% decrease in its approved daily rate for those LEA pupils that exceeded sixteen (16), for those days (over five).

In the event a nonpublic school is unable to fill a vacant teaching position responsible for direct instruction to students, and the vacancy has direct impact on the California Department of Education Certification of that school, the nonpublic school shall develop a plan to assure appropriate coverage of student by first utilizing existing certificated staff. The nonpublic school and the LEA may agree to one 30 school day period per contract year

where class size may be increased to assure coverage by an appropriately credentialed teacher. Such an agreement shall be in writing and signed by both parties. This provision does not apply to a nonpublic agency.

CONTRACTOR providing special education instruction for individuals with exceptional needs between the ages of three and five years, inclusive, shall also comply with the appropriate instructional adult to child ratios pursuant to California Education Code sections 56440 et seq.

## 26. CALENDARS

The CONTRACTOR shall submit to LEA a school calendar with the total number of billable days not to exceed 180 days for the regular school year, plus extended school year billable days equivalent to the number of days determined by LEA's extended school year calendar, as determined by the IEP/IFSP team. Billable days shall include only those days that are included in the submitted and approved school calendar, and/or required by the IEP/IFSP for each pupil. CONTRACTOR shall adhere to the requirements for providing Extended School Year as outlined in Title 5, Article 4 of the California Code of Regulations. Unless otherwise specified by the pupils' IEP/IFSP, educational services shall occur at the school site.

When CONTRACTOR is a nonpublic agency, CONTRACTOR shall be provided with a LEA developed/approved calendar; CONTRACTOR herein agrees to observe holidays as specified in the LEA-developed/approved calendar. CONTRACTOR shall provide services pursuant to the LEA-developed/approved calendar, or as specified in the LEA pupil's IEP/IFSP and ISA. Unless otherwise specified in the LEA pupil's IEP/IFSP and ISA, CONTRACTOR shall provide related services to LEA pupils on only those days that the LEA pupil's school of attendance is in session and the LEA pupil attends school. CONTRACTOR shall bill only for services provided on billable days of attendance as indicated on the LEA calendar unless otherwise specified in the LEA pupil's IEP/IFSP and ISA.

## 27. DATA REPORTING

CONTRACTOR shall agree to provide all data related to student information and billing information with LEA. CONTRACTOR shall agree to provide all data related to any and all sections of this contract and requested by and in the format require by the LEA. CONTRACTOR shall provide the LEA with invoices, attendance reports and progress reports for LEA pupils enrolled in CONTRACTOR's nonpublic school or nonpublic agency.

The LEA shall provide the CONTRACTORS with approved forms and/or format for such data including but not limited to invoicing, attendance reports and progress reports. The LEA may approve use of CONTRACTORS-provided forms at their discretion.

## 28. LEAST RESTRICTIVE ENVIRONMENT/DUAL ENROLLMENT

CONTRACTOR and LEA shall follow all LEA policies and procedures that support Least Restrictive Environment ("LRE") placement options and/or Dual Enrollment options for pupils to have access to the general curriculum and to be educated with their nondisabled peers to the maximum extent appropriate.

CONTRACTOR and LEA shall ensure that LRE placement options are addressed at all IEP/IFSP team meetings regarding pupils for whom ISAs have been or may be executed. This shall include IEP/IFSP team consideration of supplementary aids and services, goals and objectives necessary for placement in the LRE and that may be necessary to enable pupils to transition to less restrictive settings.

When an IEP/IFSP team has determined that an LEA pupil should be transitioned into the public school setting, CONTRACTOR shall assist the LEA in implementing the IEP/IFSP team's recommendations to support the transition.

## 29. STATEWIDE ACHIEVEMENT TESTING AND HIGH SCHOOL EXIT EXAMINATION

CONTRACTOR is subject to the alternative accountability system developed pursuant to Education Code section 52052, in the same manner as public schools. Each LEA pupil placed with CONTRACTOR by the LEA shall be tested, as determined by the pupil's IEP, by qualified staff of CONTRACTOR in accordance with that accountability program. Contractor shall report the test results to the CDE as required by Education Code section

56366(a)(8)(A). Test results shall be made available to the CONTRACTOR by the LEA, if the results are not sent to the CONTRACTOR by the test publisher or CDE.

CONTRACTOR and LEA shall work together to administer all statewide achievement tests and the High School Exit Examination to LEA pupils pursuant to LEA and CDE guidelines. LEA shall provide NPS with the SSID for each LEA pupil. LEA shall cooperate with CONTRACTOR to accommodate CONTRACTOR's testing window. (Education Code Section 56366(a)(8)(B))

## 30. ATTENDANCE AT DISTRICT MANDATED MEETINGS
CONTRACTOR shall attend District mandated meetings when legal mandates, and/or LEA policy and procedures are reviewed, including but not limited to the areas of: curriculum, high school graduation, standards-based instruction, cultural and linguistic needs of pupils with disabilities, dual enrollment responsibilities, LRE responsibilities, transition services, and standardized testing. LEA shall provide CONTRACTOR with reasonable notice of mandated meetings. Attendance at such meetings does not constitute a billable service hour(s). After attending one meeting during the school year (including Extended School Year), upon request, a CONTRACTOR who is providing NPA services may request payment for services for attending any additional meetings mandated by the LEA. The request for payment will be at the CONTRACTOR'S agreed upon hourly rate.

## 31. POSITIVE BEHAVIOR INTERVENTIONS
CONTRACTOR shall comply with the requirements of Title 5 of the California Code of Regulations sections 3001(c)-(f) and 3052(l)(1-8) regarding positive behavior interventions including, but not limited to: the completion of functional analysis assessments; the development, implementation, monitoring, supervision, modification, and evaluation of behavior intervention plans; and emergency interventions.

CONTRACTOR shall designate an individual employed, contracted, and/or otherwise hired by CONTRACTOR as a "behavior intervention case manager (BICM)" as that term is defined in Title 5 of the California Code of Regulations section 3001(e). The BICM shall be trained regarding the SELPA Policy. CONTRACTOR shall maintain a written policy in compliance with Title 5 of the California Code of Regulations section 3052(i) and (k) regarding emergency interventions and Behavioral Emergency Reports.

CONTRACTOR shall ensure that all of its staff members are trained annually in crisis intervention and emergency procedures as related to appropriate behavior management strategies.

CONTRACTOR shall not authorize, order, consent to, or pay for any of the following prohibited interventions, or any other intervention similar to or like the following: (a) any intervention that is designed to, or likely to, cause physical pain; (b) releasing noxious, toxic, or otherwise unpleasant sprays, mists, or substances in proximity to the LEA pupil's face; (c) any intervention which denies adequate sleep, food, water, shelter, bedding, physical comfort, or access to bathroom facilities; (d) any intervention which is designed to subject, used to subject, or likely to subject the LEA pupil to verbal abuse, ridicule, or humiliation, or which can be expected to cause excessive emotional trauma; (e) restrictive interventions which employ a device, material, or objects that simultaneously immobilize all four extremities, including the procedure known as prone containment, except that prone containment or similar techniques may be used as a short term emergency intervention by CONTRACTOR's trained and qualified personnel as allowable by applicable law and regulations; (f) locked seclusion except as allowable by applicable law and regulations; (g) any intervention that precludes adequate supervision of individual; and (h) any intervention which deprives the LEA pupil of one or more of his or her senses, pursuant to California Code of Regulations 3052(l) (1-8).

## 32. PUPIL DISCIPLINE
CONTRACTOR shall maintain and abide by a written policy for pupil discipline that is consistent with state and federal law and regulations.

When CONTRACTOR seeks to remove a LEA pupil from his/her current educational placement for disciplinary reasons, CONTRACTOR shall immediately submit a written discipline report to the LEA. Written discipline reports shall include, but not be limited to: the LEA pupil's name; the time, date, and description of the misconduct; the disciplinary action taken by CONTRACTOR; and the rationale for such disciplinary action. A

copy of the LEA pupil's behavior plan, if any, shall be submitted with the written discipline report. CONTRACTOR and LEA agree to participate in a manifestation determination at an IEP/IFSP meeting no later than the tenth (10th) day of suspension. LEA shall notify and invite CONTRACTOR representatives to the IEP/IFSP team meeting where the manifestation determination will be made.

## 33. IEP/IFSP TEAM MEETINGS

Upon referral of an LEA pupil to CONTRACTOR, the LEA shall provide CONTRACTOR with a copy of that pupil's IEP/IFSP, as well as available assessment information, and facilitate, if requested, an observation of the pupil. CONTRACTOR retains the right to decline enrollment of any pupil, unless ordered by the Office of Administrative Hearing (OAH) or a Court of Competent Jurisdiction. CONTRACTOR shall notify the LEA written notification of its intent to decline enrollment of the LEA pupil.

An IEP/IFSP team meeting shall be convened at least annually to evaluate: (1) the educational progress of each pupil placed with CONTRACTOR, including all state assessment results pursuant to the requirements of Education Code section 52052; (2) whether or not the needs of the LEA pupil continue to be best met at the nonpublic school; and (3) whether changes to the LEA pupil's IEP/IFSP are necessary, including whether the pupil may be transitioned to a public school setting. With parent and LEA concurrence, an IEP team may excuse a required IEP team member either from the entire meeting or after the member's report.

Each LEA pupil shall be allowed to provide confidential input to any representative of his or her IEP/IFSP team. Except as otherwise provided in the Master Contract, CONTRACTOR and LEA shall participate in all IEP/IFSP team meetings regarding LEA pupils for whom ISAs have been or may be executed. A CONTRACTOR who is providing NPA services may request payment for services for attending any meeting that occurs after the Annual Review of the IEP/IFSP. At any time during the term of this Master Contract, the parent, the CONTRACTOR or the LEA may request a review of the pupil's IEP/IFSP, subject to all procedural safeguards required by law, including reasonable notice given to, and participation of, the CONTRACTOR in the meeting. Every effort shall be made to schedule IEP/IFSP team meetings at a time and place that is mutually convenient to parents, CONTRACTOR and LEA. CONTRACTOR shall provide to LEA assessments and written assessment reports by service providers upon request and/or pursuant to LEA policy and procedures.

Changes in any LEA pupil's educational program, including instruction, services, or instructional setting, provided under this Master Contract may only be made on the basis of revisions to the pupil's IEP/IFSP. In the event that the CONTRACTOR believes the pupil requires a change of placement, the CONTRACTOR may request a review of the pupil's IEP/IFSP for the purposes of consideration of a change in the pupil's placement. Pupil is entitled to remain in the last agreed upon and implemented placement unless parent agrees otherwise or an interim alternative educational placement is deemed lawful and appropriate by LEA or OAH.

## 34. SURROGATE PARENTS

CONTRACTOR shall comply with LEA procedures for obtaining surrogate parents from the LEA.

## 35. DUE PROCESS PROCEEDINGS

CONTRACTOR shall fully participate, without remuneration, in special education due process proceedings related to LEA pupils enrolled in CONTRACTOR's education program, including mediations and hearings, as requested by LEA and /or OAH. CONTRACTOR shall also fully participate in the investigation and provision of documentation related to any complaint filed with the State of California, the Office of Civil Rights, or any other state and/or federal governmental body or agency.

## 36. COMPLAINT PROCEDURES

CONTRACTOR shall maintain and adhere to its written procedures for responding to parent complaints. These procedures shall include annually notifying and providing parents of LEA pupils with appropriate information (including complaint forms) for the following: (1) Uniform Complaint Procedures pursuant to Title 5 of the California Code of Regulations section 4600 et seq.; (2) Nondiscrimination policy pursuant to Title 5 of the California Code of Regulations section 4960 (a); (3) Sexual Harassment Policy, California Education Code 231.5 (a) (b) (c); (4) Title IX Pupil Grievance Procedure, Title IX 106.8 (a) (d) and 106.9 (a); and (5) Notice of Privacy

Practices in compliance with Health Insurance Portability and Accountability Act (HIPPA). CONTRACTOR shall include verification of these procedures to the LEA.

**37. LEA PUPIL PROGRESS REPORTS/REPORT CARDS AND ASSESSMENTS**
Unless LEA requests in writing that progress reports be provided on a monthly basis, progress reports shall be sent by CONTRACTOR to LEA and parents no later than October 30th, January 30th, April 30th, and July 30th or as otherwise specified on the IEP/IFSP or requested in writing by the LEA, with respect to LEA pupils enrolled in CONTRACTOR's educational program. An updated report shall be submitted if there is no current progress report when LEA pupil is scheduled for a review by the LEA's IEP/IFSP team or when an LEA pupil's enrollment is terminated. Payment of invoices may be held until progress reports are provided. A copy of the progress reports/report cards shall be maintained at the CONTRACTOR's place of business and made available upon request of LEA and/or the LEA pupil's parent(s).

CONTRACTOR shall complete academic or other assessment of the LEA pupil one month prior to the LEA pupil's annual or triennial review IEP/IFSP team meeting for the purpose of reporting the LEA pupil's present levels of performance at the IEP/IFSP team meeting as required by state and federal laws and regulations and pursuant to LEA policies, procedures, and/or practices. Supporting documentation, such as test protocols and data collection, shall be made available to LEA upon request. CONTRACTOR shall not charge the LEA pupil's parent(s) or LEA for the provision of progress reports, report cards, and/or any assessments, interviews, or meetings.

**38. TRANSCRIPTS**
When CONTRACTOR is a nonpublic school, CONTRACTOR, at the close of each semester or upon LEA student transfer, shall prepare transcripts for LEA pupils in grades nine through twelve inclusive, and submit them on LEA approved forms to the LEA pupil's district of residence, for evaluation of progress toward completion of diploma requirements, or if appropriate, a Certificate of Completion, as specified in LEA Procedures. CONTRACTOR shall submit to the LEA names of LEA pupils and their schools of residence for whom transcripts have been submitted as specified by the LEA.

**39. LEA PUPIL CHANGE OF RESIDENCE**
Within three (3) school days after CONTRACTOR or LEA becomes aware of a LEA pupil's change of residence, CONTRACTOR shall notify LEA and/or the LEA shall notify CONTRACTOR of the LEA pupil's change of residence as specified in LEA Procedures. Upon enrollment, CONTRACTOR shall notify parents in writing of the parent's obligation to notify CONTRACTOR of the LEA pupil's change of residence. CONTRACTOR shall maintain, and provide upon request by LEA, documentation of such notice to parents.

If the LEA pupil's change of residence is to a residence outside of LEA's service boundaries or CONTRACTOR fails to follow the procedures specified in this provision, LEA shall not be responsible for the costs of services delivered after the LEA pupil's change of residence, if CONTRACTOR had knowledge or should reasonably have had knowledge of the LEA pupil's change of residence.

**40. WITHDRAWAL OF LEA PUPIL FROM PROGRAM**
CONTRACTOR shall immediately report, by telephone, to the LEA when a LEA pupil is withdrawn from school and/or services. CONTRACTOR shall confirm such telephone call on LEA approved forms and submit within three (3) days.

**41. PARENT ACCESS**
CONTRACTOR shall provide for reasonable parental access to LEA pupils and all facilities including, but not limited to, the instructional setting, recreational activity areas, meeting rooms and LEA pupil living quarters, for those parents whose children reside in the living quarters. CONTRACTOR shall comply with any known court orders regarding parental visits and access to LEA pupils.

CONTRACTORS operating programs with residential components shall cooperate with a parent's reasonable request for LEA pupil visits in their home during, but not limited to, holidays and weekends.

**42. SERVICES AND SUPERVISION ON PUBLIC SCHOOL CAMPUSES**

If CONTRACTOR provides services on LEA public school campuses, CONTRACTOR shall comply with Penal Code Section 627.1 et. seq., and LEA procedures regarding visitors to school campuses specified by LEA policy and in the LEA Procedures, and shall follow the procedures of the campus being visited. CONTRACTOR shall be responsible for purchase and provision of the supplies and assessment tools necessary to implement the provision of services on LEA public school campuses.

**43. LICENSED CHILDREN'S INSTITUTION CONTRACTORS**

If CONTRACTOR is a licensed children's institution (hereinafter referred to as "LCI"), CONTRACTOR shall adhere to all legal requirements regarding educational placements for LCI pupils as stated in Education Code 56366 (a) (2) (C), 56366.9, Health and Safety Code section 1501.1(b), AB 1858, AB490 (Chapter 862, Statutes of 2003) and the procedures set forth in the LEA Procedures. A LCI shall not require that a pupil be placed in its nonpublic school as a condition of being placed in its residential facility.

If CONTRACTOR is a nonpublic, nonsectarian school that is owned, operated by, or associated with a LCI, CONTRACTOR shall provide to LEA, on a quarterly basis, a list of all LEA pupils, including those identified as eligible for special education. For those identified special education pupils, the list shall include: 1) special education eligibility at the time of enrollment, and 2) the educational placement and services specified in each pupil's IEP/IFSP at the time of enrollment.

**44. STATE MEAL MANDATE**

When CONTRACTOR is a nonpublic school, CONTRACTOR and LEA shall satisfy the State Meal Mandate under California Education Code sections 49530, 49530.5 and 49550.

**45. MONITORING**

CONTRACTOR shall allow access by LEA to its facilities for periodic monitoring of each LEA pupil's instructional program and shall be invited to participate in the review of each pupil's progress. LEA shall have access to observe each LEA pupil at work, observe the instructional setting, interview CONTRACTOR, and review each LEA pupil's records and progress. Such access shall include unannounced monitoring visits. When making site visits, LEA shall initially report to CONTRACTOR's site administrative office.

If CONTRACTOR is also a LCI, LEA shall annually evaluate whether CONTRACTOR is in compliance with Education Code section 56366.9 and Health and Safety Code section 1501.1(b).

During the term of this Master Contract, CONTRACTOR shall participate in a District Validation Review to be conducted as aligned with the CDE On-site Review or more often if necessary. This review will address programmatic aspects of the Nonpublic School/Agency, compliance with relevant state and federal regulations, and Master Contract compliance. CONTRACTOR shall complete and submit a Nonpublic School/Agency Self-Assessment Checklist submitted as specified in the LEA.

CONTRACTOR shall participate in Coordinated Compliance Review ("CCR") and Self Review in accordance with requirements of CDE. CONTRACTOR will use and follow all LEA forms and procedures required for compliance.

CONTRACTOR understands that LEA reserves the right to institute a program audit with or without cause. The program audit may include, but is not limited to, a review of core compliance areas of health and safety; curriculum/instruction; related services; and contractual, legal, and procedural compliance.

When CONTRACTOR is a nonpublic school, CONTRACTOR shall prepare a School Accountability Report Card in accordance with California Education Code Section 56366(a)(9) and 33126 and state guidelines.

*PERSONNEL*

## 46. FINGERPRINT CLEARANCE REQUIREMENTS

CONTRACTOR shall comply with the requirements of California Education Code section 44237, 35021.1 and 35021.2 including, but not limited to: obtaining clearance from both the California Department of Justice (hereinafter referred to as "CDOJ") and clearance from the Federal Bureau of Investigation (hereinafter referred to as "FBI") for CONTRACTOR's employees and volunteers, unless CONTRACTOR determines that the volunteers will have no direct contact with LEA pupils, prior to service with any LEA pupil. CONTRACTOR hereby agrees that CONTRACTOR's employees and volunteers, unless CONTRACTOR determines that the volunteers will have no direct contact with LEA pupils, shall not come in contact with LEA pupils until CDOJ and FBI clearance are ascertained. CONTRACTOR shall certify in writing to LEA that none of its employees, and volunteers, unless CONTRACTOR determines that the volunteers will have no direct contact with LEA pupils, or contractors who may come into contact with LEA pupils have been convicted of a violent or serious felony as those terms are defined in California Education Code section 44237(h), unless despite the employee's conviction of a violent or serious felony, he or she has met the criteria to be eligible for employment pursuant to California Education Code section 44237 (i) or (j). In addition, CONTRACTOR shall make a request for subsequent arrest service from the CDOJ as required by California Penal Code section 11105.2.

## 47. STAFF QUALIFICATIONS

CONTRACTOR shall ensure that all individuals employed, contracted, and/or otherwise hired by CONTRACTOR to provide classroom and/or individualized instruction or related services hold a license, certificate, permit, or other document equivalent to that which staff in a public school are required to hold in the service rendered consistent with Education Code section 56366.1(n)(1) and are qualified pursuant to Title 5 of the California Code of Regulations sections 3001(y), 3064 and 3065.

Only those nonpublic, nonsectarian schools or agencies located outside of California that employ staff that hold a current valid credential or license to render special education and related services as required by that state shall be eligible to be certified.

CONTRACTOR shall comply with personnel standards and qualifications regarding instructional aides and teacher assistants respectively pursuant to Federal requirements and California Education Code sections 45340 et seq. and 45350 et seq. CONTRACTOR shall comply with all laws and regulations governing the licensed professions, including but not limited to, the provisions with respect to supervision.

Notwithstanding the foregoing, if current license or credential documents are not available through no fault of the NPS/A, timely application having theretofore been made, this Master Contract shall remain in effect until such documents are made available to the NPS/A from the Consumer Affairs Department or the Commission on Teacher Credentialing. The NPS/A shall in turn submit copies of same to the LEA within five (5) business days of receipt by the NPS/A.

## 48. VERIFICATION OF LICENSES, CREDENTIALS AND OTHER DOCUMENTS

CONTRACTOR shall submit to LEA a staff list, and copies of all current licenses, credentials, permits and/or other documents, which entitle the holder to provide special education and/or related services by individuals employed, contracted, and/or otherwise hired by CONTRACTOR. CONTRACTOR shall notify the CDE and the LEA in writing as specified in the LEA Procedures and CDE within forty-five (45) days when personnel changes occur which may affect the provision of special education and/or related services to LEA pupils as specified in the LEA Procedures. Notwithstanding the foregoing, if current license or credential documents are not available through no fault of the NPS/A, timely application having theretofore been made, this Master Contract shall remain in effect until such documents are made available to the NPS/A from the Consumer Affairs Department or the Commission on Teacher Credentialing. The NPS/A shall in turn submit copies of same to the LEA within five (5) business days of receipt by the NPS/A.

CONTRACTOR shall monitor the status of licenses, credentials, permits and/or other documents for all individuals employed, contracted, and/or otherwise hired by CONTRACTOR to provide special education services to LEA students. CONTRACTOR shall provide to LEA updated information regarding the status of licenses,

credentials, permits and/or other documents as specified in LEA Procedures. CONTRACTOR will be considered to be in breach of this contract for any service provided by an unqualified provider or one who has an expired credential. In such an event, the provider shall be paid at 70% of the agreed upon rate.

### 49. STAFF ABSENCE

When CONTRACTOR is a nonpublic school and CONTRACTOR's classroom teacher is absent, CONTRACTOR shall provide an appropriately credentialed substitute teacher in the absent teacher's classroom in accordance with California Education Code section 56061. CONTRACTOR shall provide to LEA documentation of substitute coverage on LEA substitute teacher log. Substitute teachers shall remain with their assigned class during all instructional time. LEA shall not be responsible for payment for instruction and/or services when an appropriately credentialed substitute teacher is not provided. If a teacher is absent and a non-qualified substitute has been provided, CONTRACTOR will notify the LEA immediately. The LEA will determine how to address the denial of FAPE.

When CONTRACTOR is a nonpublic agency, and CONTRACTOR's service provider is absent, CONTRACTOR shall provide a qualified (as defined in section eight (8) of this Master Contract and as determined by LEA) substitute, unless LEA provides appropriate coverage in lieu of CONTRACTOR's service providers. LEA will not pay for services unless a qualified substitute is provided and/or CONTRACTOR provides a mutually agreed upon plan evidencing the provision of "make-up" services by a qualified service provider. This plan must be submitted within ten (10) school days of the initial provider's absence. CONTRACTOR shall not "bank" or "carry over" make up service hours under any circumstances, unless otherwise agreed to in writing by CONTRACTOR and LEA.

*HEALTH AND SAFETY MANDATES*

### 50. HEALTH AND SAFETY

CONTRACTOR shall comply with all applicable federal, state, local, and LEA laws, regulations, ordinances, policies, and procedures regarding pupil and employee health and safety. CONTRACTOR shall comply with the requirements of California Education Code sections 35021 et. seq. regarding the examination of CONTRACTOR's employees and volunteers for tuberculosis. CONTRACTOR shall provide to LEA documentation for each individual volunteering, employed, contracted, and/or otherwise hired by CONTRACTOR of such compliance before an individual comes in contact with an LEA pupil. CONTRACTOR will comply with the requirements of California Education Code section 35021 et seq., regarding preventing registered sex offenders from volunteering and to request fingerprinting clearance of volunteers.

CONTRACTOR shall comply with OSHA Blood Borne Pathogens Standards, Title 29 Code of Federal Regulations (CFR) section 1910.1030, when providing medical treatment or assistance to a pupil. CONTRACTOR further agrees to provide annual training regarding universal health care precautions and to post required notices in areas designated in the California Health and Safety Code.

### 51. FACILITIES, FACILITIES MODIFICATIONS AND FIRE DRILLS

a. Facilities

CONTRACTOR shall provide special education and/or related services to LEA pupils in facilities that comply with all applicable federal, state, and local laws, regulations, and ordinances related to, but not limited to: disability access; fire, health, sanitation, and building standards and safety; fire warning systems; zoning permits; and occupancy capacity. CONTRACTOR shall be responsible for any structural changes and/or modifications to CONTRACTOR's facilities as required complying with applicable federal, state, and local laws, regulations, and ordinances.

b. Fire Drills

When CONTRACTOR is a nonpublic school, CONTRACTOR shall conduct fire drills monthly for elementary and intermediate students and twice per school year for secondary students, as required by Title 5 California Code of Regulations, Section 550.

## 52. ADMINISTRATION OF MEDICATION

CONTRACTOR shall comply with the requirements of California Education Code section 49423 when CONTRACTOR serves an LEA pupil that is required to take prescription and/or over-the-counter medication during the school day. CONTRACTOR may designate personnel to assist the LEA pupil with the administration of such medication after the LEA pupil's parent(s) provides to CONTRACTOR: (a) a written statement from a physician detailing the type, administration method, amount, and time schedules by which such medication shall be taken; and (b) a written statement from the LEA pupil's parent(s) granting CONTRACTOR permission to administer medication(s) as specified in the physician's statement. CONTRACTOR shall maintain, and provide to LEA upon request, copies of such written statements. CONTRACTOR shall maintain a written log for each LEA pupil to whom medication is administered. Such written log shall specify the LEA pupil's name; the type of medication; the date, time, and amount of each administration; and the name of CONTRACTOR's employee who administered the medication. Any change in medication type, administration method, amount or schedule must be authorized by both a licensed physician and parent.

## 53. INCIDENT/ACCIDENT REPORTING

CONTRACTOR shall submit within 24 hours by mail, any accident or incident report to the LEA. CONTRACTOR shall properly submit required accident or incident reports pursuant to the procedures specified in LEA Procedures.

## 54. MANDATED REPORTING REQUIREMENTS

CONTRACTOR hereby agrees to annually train all staff members, including volunteers, so that they are familiar with and agree to adhere to its own child and dependent adult abuse reporting obligations and procedures as specified in California Penal Code section 11164 et seq. To protect the privacy rights of all parties involved (i.e., reporter, child and alleged abuser), reports will remain confidential as required by law and professional ethical mandates. A written notice acknowledging the legal requirements of such reporting and verification of staff adherence to such reporting shall be submitted to the LEA.

CONTRACTOR agrees to provide annual training to all employee and volunteer staff regarding mandated child abuse reporting laws, and shall maintain documentation, signed by each staff member receiving such training. CONTRACTOR agrees that its obligations to report incidents of abuse or neglect to the LEA are in addition to, and not in lieu of, CONTRACTOR's obligation to immediately report suspected abuse or neglect to the appropriate public authorities. CONTRACTOR shall maintain confidential records of any report of suspected child abuse and shall inform the LEA by facsimile or mail within 24 hours of becoming aware of circumstances including, but not limited to allegations of abuse involving a staff member or school volunteer.

CONTRACTOR shall notify the LEA of general concerns regarding the health and safety of a pupil that may impact the pupil's educational program, including the need for mental health services, injuries requiring medical attention or injuries resulting from physical restraint.

## 55. SEXUAL HARASSMENT

CONTRACTOR shall have a Sexual and Gender Identity harassment policy that clearly describes the kinds of conduct that constitutes sexual harassment and that is prohibited by the CONTRACTOR's policy, as well as federal and state law. The policy should include procedures to make complaints without fear of retaliation, and for prompt and objective investigations of all sexual harassment complaints. CONTRACTOR further agrees to provide annual training to all employees regarding the laws concerning sexual harassment and related procedures.

## 56. REPORTING OF MISSING CHILDREN

CONTRACTOR assures LEA that all staff members, including volunteers, are familiar with and agree to adhere to requirements for reporting missing children as specified in California Education Code section 49370. A written statement acknowledging the legal requirements of such reporting and verification of staff adherence to such reporting shall be properly submitted to the LEA. The written statement shall be submitted as specified by the LEA.

*FINANCIAL*

## 57. ENROLLMENT, CONTRACTING, SERVICE TRACKING, ATTENDANCE REPORTING, AND BILLING PROCEDURES

CONTRACTOR shall assure that the school or agency has the necessary financial resources to provide an appropriate education for the children enrolled and will distribute those resources in such a manner to implement the IEP/IFSP for each and every child.

CONTRACTOR shall be paid for the provision of special education and/or related services specified in the LEA pupil's IEP/IFSP and ISA. All payments by LEA shall be made in accordance with the terms and conditions of this Master Contract.

CONTRACTOR shall maintain registers for the basic education program and each related service. Original attendance forms shall be completed by the actual service provider whose signature shall appear on such forms and shall be available for review, inspection, or audit by LEA during the effective period of this contract and for a period of five (5) years after the date of origination. CONTRACTOR shall verify the accuracy of minutes of reported attendance that is the basis of services being billed for payment.

CONTRACTOR shall submit accurate and timely invoices and related documents to LEA for payment, for each calendar month when education or related services were provided to an LEA student. Invoices shall be submitted no later than thirty (30) days after the end of the attendance accounting period in which the services were rendered. LEA shall make payment to CONTRACTOR based on the number of billable days of attendance and hours of service at rates specified in this contract within forty-five (45) days of LEA's receipt of properly submitted hard copy of invoices prepared and submitted as specified in California Education Code Section 56366.5. CONTRACTOR shall correct deficiencies and submit rebilling invoices no later than thirty (30) calendar days after the invoice is returned by LEA. LEA shall pay properly submitted re-billing invoices no later than forty-five (45) days from the date a completely corrected re-billing invoice is received by LEA.

If the LEA fails to comply with the provision of payment within 45 days of receipt of the request for payment of services, the CONTRACTOR may require the LEA to pay an additional amount of 1-1/2 percent of the unpaid balance per month until full payment is made (California Education Code 56366.6 (b)). Upon written notification of dispute, CONTRACTOR shall not apply additional charges to the disputed bill until the matter is resolved.

## 58. RIGHT TO WITHHOLD PAYMENT

LEA may withhold payment to CONTRACTOR when: (a) CONTRACTOR has failed to perform, in whole or in part, under the terms of this contract; (b) CONTRACTOR was overpaid by LEA as determined by inspection, review, and/or audit of its program, work, and/or records; (c) CONTRACTOR has failed to provide supporting documentation with an invoice, as required by Section 57; (d) education and/or related services are provided to LEA pupils by personnel who are not appropriately credentialed, licensed, or otherwise qualified; (e) LEA has not received prior to school closure or contract termination, all documents concerning one or more LEA pupils enrolled in CONTRACTOR's educational program; (f) CONTRACTOR fails to confirm a pupil's change of residence to another district or confirms the change or residence to another district, but fails to notify LEA with five (5) days of such confirmation; or (g) CONTRACTOR receives payment from Medi-Cal or from any other agency or funding source for a service provided to a LEA pupil.

The amount which may be withheld by LEA with respect to each of the subparagraphs of the preceding paragraph are as follows: (a): the value of the service CONTRACTOR failed to perform; (b): the amount of overpayment; (c): the entire portion of the invoice for which satisfactory documentation has not been provided by CONTRACTOR (d): the amount invoiced for services provided by the individual not appropriately credentialed, licensed, or otherwise qualified; (e): the proportionate amount of the invoice related to the applicable pupil for the time period from the date of the violation occurred and until the violation is cured; or (f): the amount paid to CONTRACTOR by Medi-Cal or another agency or funding source for the service provided to the LEA pupil.

If LEA determines that cause exists to withhold payment to CONTRACTOR, LEA shall, within ten (10) business days of receipt of such invoice, provide to CONTRACTOR written notice that LEA is withholding payment. Such

notice shall specify the basis or bases for LEA's withholding payment and the amount to be withheld. Within thirty (30) days from the date of receipt of such notice, CONTRACTOR shall take all necessary and appropriate action to correct the deficiencies that form the basis for LEA's withholding payment or submit a written request for extension of time to correct the deficiencies. Upon receipt of CONTRACTOR's written request showing good cause, LEA shall extend CONTRACTOR's time to correct deficiencies (usually an additional thirty (30) days), otherwise payment will be denied.

If after subsequent request for payment has been denied and CONTRACTOR believes that payment should not be withheld, CONTRACTOR shall send written notice to LEA specifying the reason it believes payment should not be withheld. LEA shall respond to CONTRACTOR's notice within thirty (30) business days by indicating that a warrant for the amount of payment will be made or stating the reason LEA believes payment should not be made. If LEA fails to respond within thirty (30) business days or a dispute regarding the withholding of payment continues after the LEA's response to CONTRACTOR's notice, CONTRACTOR shall invoke the following escalation policy.

    a. Persons involved after forty-one (41) business days: If CONTRACTOR notifies LEA that the dispute has not been resolved by the LEA Specialist, LEA's Administrator will become involved and shall attempt to resolve the dispute. The LEA Coordinator shall respond to the CONTRACTOR in writing within ten (10) business days.

    b. Persons involved after fifty-one (51) business days: If CONTRACTOR notifies LEA that the dispute has not been resolved by the LEA Administrator, the SELPA Director shall become involved. The SELPA Director shall respond to the CONTRACTOR in writing within ten (10) business days. This shall be the final LEA determination regarding the withholding of payment.

    c. Persons involved after sixty-one (61) business days: Dispute Resolution, as defined in the SELPA's Local Plan, shall be followed.

If the dispute has not been resolved through the SELPA's Dispute Resolution process, the party claiming injury may seek legal or CDE redress, or may submit, if mutually agreed to in writing by the parties, the matter to binding arbitration by an arbitrator or arbitration service agreed upon by the parties. Each party shall be responsible for their own fees for arbitration, if applicable. The parties agree that this Master Contract provision dealing with Master Contract disputes does not alter the parties' right to bring action in accordance with the applicable statute of limitations under state or federal law.

## 59. PAYMENT FROM OUTSIDE AGENCIES
CONTRACTOR shall notify LEA when Medi-Cal or any other agency is billed for the costs associated with the provision of special education and/or related services covered by this Master Contract or the ISA to LEA pupils. Upon request, CONTRACTOR shall provide to LEA any and all documentation regarding reports, billing, and/or payment by Medi-Cal or any other agency for the costs associated with the provision of special education and/or related services covered by this Master Contract or ISA to LEA pupils.

## 60. PAYMENT FOR ABSENCES
Two accounting/billing options are offered at the discretion of the LEA: "Excused Absence" or "Positive Attendance." In neither case will CONTRACTOR bill for any absences during Extended School Year (ESY).

Excused Absence:
No later than the 8th consecutive day of a pupil's absence, CONTRACTOR shall notify LEA of such absence. If CONTRACTOR fails to provide such notice by the 8th day of consecutive absence, CONTRACTOR shall not be compensated for services delivered during continuing absence after the 8th consecutive day of absence.

The LEA shall not be responsible for payment for more than eight (8) cumulative days of excused absences in one semester unless a written time extension is granted by LEA.
LEA shall not be responsible for payment for days of unexcused absences.

All excused absences must be verified and a copy must be submitted to LEA with the monthly invoice. All documentation must be kept for at least five (5) years from the date of origination.

Only the individuals listed below may verify the reason for absence:

1. School or public health nurse
2. Physician
3. Principal
4. Teacher
5. School employee assigned to make such verification
6. Student eighteen years of age or over
7. Parent

Any reasonable method which established the reason for the absence may be used:

Written note from parent, guardian, representative or adult pupil (over 18 or emancipated)
Telephone conversation with parent, guardian, representative, or adult pupil (over 18 or emancipated)

Standards for excused absences are defined in the education code. Contractor is responsible for verification of excused absence in accordance with current requirements.

**Positive Attendance:**
A factor of 1.055 shall be applied to all approved rates when a Positive Attendance method is used. Actual days of attendance without exception shall be counted as a unit of service.

**NONPUBLIC AGENCY PUPIL ABSENCE**
If CONTRACTOR is a nonpublic agency, it shall notify LEA of the absence of an LEA pupil no later than the fifth consecutive service day of the pupil's absence, as specified in the LEA Procedures. A unit of service for payment purposes shall not be credited for an excused absence when CONTRACTOR is provided 24 hours advance verbal notification of the pupil's absence. A unit of service for payment purposes shall not be credited to CONTRACTOR for CONTRACTOR'S staff development days.

**61. INSPECTION AND AUDIT**
The CONTRACTOR shall maintain and the LEA shall have the right to examine and audit all of the books, records, documents, accounting procedures and practices and other evidence that reflect all costs claimed to have been incurred or fees claimed to have been earned under this Master Contract.

CONTRACTOR shall provide access to LEA to all records including, but not limited to: pupil records as defined by California Education Code section 49061(b). CONTRACTOR shall make available to LEA all budgetary information including operating budgets submitted by CONTRACTOR to LEA for the relevant contract period being audited.

CONTRACTOR shall provide access to LEA to all records including, but not limited to: student records as defined by California Education Code section 49061(b); registers and roll books of teachers; daily service logs and notes or other documents used to record the provision of related services; Medi-Cal/daily service logs and notes and other documents used to record provision of services provided by instructional assistants, behavior intervention aides, bus aides, and supervisors; absence verification records (parent/doctor notes, telephone logs, and related documents); bus rosters; staff lists specifying credentials held, business licenses held, documents evidencing other qualifications, social security numbers, dates of hire, and dates of termination; staff time sheets; non-paid staff and volunteer sign-in sheets; transportation and other related service subcontracts; school calendars; bell/class schedules; liability and worker's compensation insurance policies; state nonpublic school and/or agency certifications; marketing materials; by-laws; lists of current board of directors/trustees, if incorporated; statements of income and expenses; general journals; cash receipts and disbursement books; general ledgers and supporting documents; federal/state payroll quarterly reports; and bank statements and canceled checks or facsimile thereof. Such access shall include unannounced inspections by LEA. CONTRACTOR shall make available to LEA all budgetary information including operating budgets submitted by CONTRACTOR to LEA for the relevant contract period being audited.

CONTRACTOR shall make all records, or copies of records, available at either the office of the LEA or at the CONTRACTOR's offices (to be specified by LEA) at all times and without charge. All records shall be provided to LEA within) ten (10) working days of a written request from LEA. CONTRACTOR shall, at no cost to LEA, provide assistance for such examination or audit. LEA's rights under this section shall also include access to CONTRACTOR's offices for purposes of interviewing CONTRACTOR's employees. If any document or evidence is stored in an electronic form, a hard copy shall be made available to the LEA, unless the LEA agrees to the use of the electronic format. CONTRACTOR may request from the LEA an extension of time to comply with any records request, which shall not be unreasonably withheld.

If an inspection, review, or audit by the LEA, a state agency, a federal agency, and/or an independent agency/firm determines that the CONTRACTOR or the LEA owes the other monies as a result of over billing, underpayment, or failure to perform, in whole or in part, any of its obligations under this Master Contract, the party owed money shall provide to the other party written notice demanding payment and specifying the basis or bases for such demand. Unless otherwise agreed in writing, the party that owes money shall make such payment within thirty (30) days of receipt of the written notice demanding payment. In the event that a party from whom payment is demanded disputes that any payment is owed, the matter shall be resolve in accordance with the dispute resolution section of this Master Contract.

The attached rate schedule limits the number of LEA students that may be enrolled and maximum dollar amount of the contract. It may also limit the maximum number of students that can be provided specific services. Per diem rates for LEA students whose IEPs authorize less than a full instructional day shall be adjusted proportionally. Special education and/or related services offered by CONTRACTOR, shall be provided by qualified personnel as per State and Federal law, and the codes and charges for such educational and/or related services during the term of this contract, shall be as stated in Section 62.

The parties hereto have executed this Contract by and through their duly authorized agents or representatives. This contract is effective on the 1st day of July 2013, and terminates at 5:00 p.m. on June 30, 2014, unless sooner terminated as provided herein.

| CONTRACTOR | SCHOOL DISTRICT/SELPA |
|---|---|
| *Tobinworld* | Contra Costa<br>**Special Education Local Plan Area** |
| *Signature*  ~~Judy Weber~~     Date 6-13-13<br>Name and Title of Authorized Representative | *Signature*                6/19/13 *Date*<br>Name and Title of Authorized Representative:<br><br>**Laura VanDuyn, Ed.D.**<br>**SELPA Executive Director** |
| Notices to CONTRACTOR shall be addressed to:<br>Name<br><br>**Judy Weber, Executive Director** | Notices to LEA shall be addressed to:<br><br>**Laura VanDuyn, Ed.D., Executive Director**<br>**Contra Costa SELPA** |
| Address<br><br>*920 E. Broadway St.* | Address<br><br>2520 Stanwell Drive, Suite 270 |
| City                State        Zip<br>*Glendale*            *CA*      *91205* | City                State        Zip<br>Concord, CA 94520 |
| Phone: *(818) 247-7474*<br>Fax: *(818) 247-6516*<br>E-mail: *jw2020@aol.com*<br>Website: *www.Tobinworld.org* | Phone: **(925) 827-0949 x14**<br>Fax:    **(925) 825-1124**<br>E-mail:  lvanduyn@ccselpa.org<br>Website: www.ccselpa.org |